# ROSCOE v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**Division One, March 28, 1907.**

1. **NEGLIGENCE: Carrier and Passenger: Pleading and Proof.** A general allegation of negligence is all that is required in case of accident and injury to the passenger, where the relation of carrier and passenger exists. And in making the proof, it is sufficient to show an accident and a resultant injury to the passenger, whereupon there is a presumption of negligence, and a prima-facie case for plaintiff is made.

2. ————: ————: **Specific Allegations and Proof.** But the rule is different where the passenger makes specific charges of negligence. Then he must prove the specific acts of negligence charged.

3. **NEGLIGENCE: Specific Allegations and Proof: Instruction: No Evidence.** Where plaintiff's instruction, intended to cover the entire case, does not submit to the jury one of the assignments of negligence, namely, in not stopping the cable train when it reached a level street from which began a rapid incline, it is not error to refuse to give an instruction for defendant which took that entire issue from the jury, simply because there is no ordinance or printed rule of the company requiring cars to be stopped at that street, if there is evidence that there were oral instructions to motormen to stop trains there, and the circumstances indicate that it was the part of prudence to so stop them.

4. ————: ————: ————: **Two Issues: No Evidence as to One.** One charge of negligence was that defendant did not provide proper, sufficient and safe means to hold firmly attached to the cable wire the grip of the train that ran into the one on which plaintiff was a passenger, and the other was that defendant did not provide means to stop said train when the grip was not so attached, and defendant by one instruction asked the trial court to withdraw both issues from the jury. *Held,* that, there being no evidence to support the last charge, but slight evidence to support the first, the court did not commit reversible error in refusing the instruction, it being the especial province of the trial court to grant a new trial when the great weight of the testimony is in favor of the losing party.

5. ———: ———: **Grip Leaving Cable: Instruction: No Evidence.** Where the evidence shows that at the brow of the hill there was great danger of the cable leaving the grip; that it might leave the grip by the motorman opening the grip too wide, when he opened it to make a stop at the street just beyond the brow of the hill; that it might leave the grip on account of a splice in the cable, or on account of a loose strand on the cable; and that the cable was not in the grip when the car was examined immediately after the accident, it is not error to refuse an instruction which withdraws from the jury the charge that defendant was negligent in not using the devices and appliances furnished for stopping the car.

6. ———: ———: **Post of Duty.** It is as much the duty of the conductor to get off of the car and go to a signal box for signals as to the movement of other trains, as it is to be on the car, and where there is no other evidence that either the motorman or conductor was not at his post of duty except a showing that the conductor had gone to the signal box for signals, defendant's instruction eliminating from the case plaintiff's charge that they were not at their post of duty should be given.

7. ———: ———: **Demurrer to Evidence.** Where there was no evidence to sustain any of the six assignments of negligence charged in the petition, except one, namely, that the appliances to stop the cable car descending an incline were not, when the cable was out of the grip, sufficient for that purpose, and there is sufficient evidence to sustain that, and that defendant had such appliances and knew they were required at the place, no demurrer to the evidence should be sustained.

8. **HYPOTHETICAL QUESTIONS: Conclusions of Witness: Specific Objection.** Hypothetical questions should not be so framed as to call for conclusions of the witness. And if they are so framed, and the opposite party specifically objects that the question requires the witness to invade the province of the jury and to find the ultimate fact to be found by the jury, it is reversible error to overrule the objection.

Appeal from Jackson Circuit Court. — *Hon. J. H. Slover,* Judge.

REVERSED AND REMANDED.

202 Sup—37

*Frank G. Johnson, Willard P. Hall* and *John H. Lucas* for appellant.

(1)   The trial court erred in giving instructions requested by the plaintiff.  (a)  Instruction 1 both enlarges and restricts the issues tendered by the pleadings, is unsupported by evidence, and contradictory of other instructions given in the case.  Purcell v. Tennant Shoe Co., 187 Mo. 287; Trigg v. Lumber Co., 187 Mo. 234; Story v. Story, 188 Mo. 127; Crane v. Railroad, 87 Mo. 595; Wojtylak v. Coal Co., 188 Mo. 283; Evans v. Railroad, 106 Mo. 601; Heinzle v. Railroad, 182 Mo. 559; Livingston v. Railroad, 170 Mo. 472.; Yall v. Gillham, 187 Mo. 408; Chitty v. Railroad, 148 Mo. 64.  (2)  Manifest error was committed by the court in refusing to give instructions .requested by defendant.  Number 11:  This was an issue submitted by the petition, but abandoned by plaintiff, and defendant had the right to have the same withdrawn from the consideration of the jury.  Number 12:  There was no evidence that the employees did not properly handle the devices and appliances, and defendant was entitled to have that withdrawn from the jury.  Number 13: No evidence that the employees caused one train to follow another, and defendant was entitled to have that issue withdrawn.  Number 14:  No evidence that failure of employees to be at proper posts of duty was the proximate cause, and defendant was entitled to have that issue withdrawn.  Number 15:  Failure to stop on east side of Penn street should have been withdrawn.   Number  16:   Defendant was  entitled to a peremptory charge.  The evidence failed to show that defendant was negligent as charged in the petition. Russell v. Barcroft, 1 Mo. 663; Hogan v. Railroad, 150 Mo. 36; Heinzle v. Railroad, 182 Mo. 559; Sawyer v. Railroad, 37 Mo. 259; Price v. Railroad, 72 Mo. 414; Bartlett v. Railroad, 148 Mo. 124; Chitty v. Railroad, 148 Mo. 64; Feary v. Railroad, 162 Mo. 96; Hite v.

Railroad, 130 Mo. 332.   (3)  The trial court admitted incompetent evidence over the objections of defendant. Graney v. Railroad, 157 Mo. 680; Koenig v. Railroad, 173 Mo. 720; Hurt v. Railroad, 94 Mo. 260; Eubank v. Edina, 88 Mo. 655; Dammann v. St. Louis, 152 Mo. 200; Koombs v. Railroad, 65 Mo. 597; Boettger v. Iron Co., 136 Mo. 536; Langston v. Railroad, 147 Mo. 465; Lee v. Kajye & Co., 155 Mo. 641; Ferguson v. Thacher, 79 Mo. 513; Taylor v. Railroad, 185 Mo. 255.

*Boyle, Guthrie & Smith* for respondent.

(1)  The trial court did not err in refusing to give instructions numbered 15 and 11 asked by defendant, upon the theory that there was no evidence tending to show that the gripman in charge of car 129 was guilty of negligence in failing to stop said car east of the center of Penn street.   It is claimed by defendant that by the failure of plaintiff to ask for an instruction as to negligence in not stopping east of the center of Penn street, plaintiff thereby abandoned that charge of his petition, and the evidence offered in support thereof.   This is a misconception of the law.   Plaintiff was not bound to ask any instructions whatever.   He could ask for as many or as few as he saw fit. If defendant desired to have the jury advised as to how they should consider the evidence offered in support of any particular claim or claims of plaintiff, defendant had the privilege of asking such instruction.   In the absence of instructions asked either by plaintiff or defendant, the jury were entitled to consider the facts according to their own judgment as to the respective obligations of the parties in the premises. Nolan v. Johns, 126 Mo. 166; Minter v. Bradstreet Co., 174 Mo. 491; Browning v. Railroad, 124 Mo. 72; Railroad v. Randolph, etc., Co., 103 Mo. 468; Drury v. White, 10 Mo. 354; Clark v. Hammerle, 27 Mo. 70; Fearey v. O'Neill,

149 Mo. 477; State to use v. Excelsior Distilling Co., 20 Mo. App. 29; Jones v. St. Louis, etc., Co., 43 Mo. App. 407; Taylor v. Springfield, 61 Mo. App. 269; Hurst v. Scammon, 63 Mo. App. 636; Hall v. Jennings, 87 Mo. App. 635. (2) The court properly refused defendant's requests, numbered 11 and 15, seeking to absolutely withdraw from the jury any consideration by them of the duties of defendant's employees in reference to stopping east of the center of Penn street. In the first place, even if plaintiff had failed to establish either an ordinance of the city or a rule of the company requiring cars to be stopped east of the center of Penn street, nevertheless, the jury had a right to take the facts in that respect into consideration in connection with the other evidence as to whether the gripman was properly using his grip or brakes—as charged in the petition, "in not properly handling and using such devices and appliances as were furnished for such purpose;" the purpose being "to hold said other cable trains firmly attached to said wire cable and to stop the same when not attached thereto;" as well as negligence "in causing one cable train to follow another down said incline before the train farthest down said incline had gotten to a place of safety." In the second place, there was positive and direct testimony that the rules of the company did require cable trains to stop east of the center of Penn street. The charge of the petition was that it was defendant's duty, and it was required by the ordinances of the city and by the rules of the company, to stop east of the center of Penn street. The failure of plaintiff to prove any ordinance requiring them to so stop, did not affect this duty or the proof that the rules of the company did so require them. (3) Plaintiff's petition amounted to a general charge of negligence. While certain items were alleged, they amounted in the aggregate to a general charge. They charge, one after the other, every reasonable and conceivable kind of negligence that could have been in-

volved in producing the given result.   Even if the grip had broken, it would have been included within the charge of the petition that the defendant did not provide "proper, sufficient and safe means to hold said cable train firmly attached to said wire cable."   What act for which the defendant could have been responsible, as the producing cause of the collision in question, is not embraced in some one of the different charges in this petition?   Such being the case, is it not the merest quibbling to say that the case should be tried by a different rule than if these items of negligence had been lumped in one general statement?

GRAVES, J.—Action for personal injuries to plaintiff who was a passenger on one of defendant's street railroad trains.   The accident in which plaintiff was injured occurred on August 22, 1902.   In the lower court plaintiff had judgment for $10,000, whereupon defendant appealed to this court.

Defendant, at date of accident, operated a double-track cable railroad, known as the Ninth Street line, running from the eastern part of Kansas City, Missouri, along Ninth street to the Union Depot.   The Union Depot was the western terminus of the line and was at the bottom of a very steep incline on Ninth street.   Defendant's trains consisted of two cars, one known as a grip-car and the other as a trailer.   The grip-car had a device known as a grip which extended down through the body of the car to a covered conduit in the street, in which conduit was a wire cable kept in continuous onward motion by power from a stationary power-house.   The grip was fitted with a clamp in which were removable dies and could be tightly closed upon the cable so as to firmly attach it thereto or could be opened so as to allow the cable to slip through. This device was worked with a lever by an operator known as a gripman.   When the grip was clamped tightly, the grip-car moved onward with the cable; when it was

opened, the car stopped from loss of motion, or could be quickly stopped at ordinary grades by the application of brakes. The trailer was propelled by being attached to the grip-car.

Ninth street at a point at or near Washington street ascended a slope of considerable grade to Penn street, which crossed it at right angles, and descended to Penn street, which was practically level for a space of twenty-eight feet. From the western edge of Penn street it began to descend and descended at a grade of 10.65 per cent to Jefferson street, and thence on down to Union Depot it descended a very steep grade of 18.6 per cent over an elevated structure or incline.

Plaintiff in his petition alleges that he was a passenger on one of defendant's trains, which had partly descended the incline near Union Depot, when suddenly and without warning, another train of defendant descended the incline behind the train which plaintiff was on with great speed and crashed into and wrecked plaintiff's train, throwing plaintiff onto the floor of the incline and against the uprights of the same, rolling him over, cutting, bruising and wounding his hands, his left heel, the back part of his head, his left shoulder and arm and his thighs, wrenching and twisting his left shoulder, cutting a gash over his right eye, cutting the joint of his left index finger to the bone, and cutting the flesh over the knee-cap of his left leg; and further alleges that prior to the injuries aforesaid, he was a strong and healthy man, forty-one years of age and weighing one hundred and ninety-one pounds, but that since said injuries he has suffered a loss of sensation in both legs and in the lower part of his body; that he could not walk without the aid of canes and crutches; that frequently he suffered from severe pains in the left side of his head and because of them was unable to sleep at night; that his nervous system was impaired and his health injured, in divers other ways; that he was engaged in the hotel brokerage business, or acted

as agent between prospective buyers and sellers of various hotel properties, and prior to the injuries aforesaid had just built up a business that was yielding him an income of about $15,000 per year; that because of his injuries aforesaid he had been unable to give his personal attention to his business and that the loss thereby was fully one-half of his income. He asked for judgment in the modest sum of $100,000.

Plaintiff's petition, for grounds of negligence and causes of his injuries, charges that his injuries were received in the following manner: (1) "Through the carelessness and negligence of the defendant, its servants, agents and employees in not stopping said other train so that the front end thereof should be east of the center of Penn street as was required by the rules of said company, and the ordinances of the city of Kansas City, obligatory upon defendant, until duly signaled that no trains were ahead of said other train down such incline, and where said other train would not be in danger of running down on Ninth street on such incline until duly propelled forward by such connection with the cable as would have prevented such train from coming down such incline faster than the speed of the cable;" (2), "and in not providing proper, sufficient and safe means to hold said other train firmly attached to said wire cable;" (3), "and to stop same when not attached thereto;" (4), "and through the carelessness and negligence of the defendant, its servants, agents and employees in not propelling, handling and using said devices and appliances as were furnished for such purpose;" (5), "and in not being at their proper and required posts of duty therefor;" (6), "and through the carelessness and negligence of the defendant, its agents, servants and employees, in causing one cable train to follow another down said incline, before the train farthest down said incline had gotten to a place of safety, so that through such defects in such means and in the

use thereof a following train would, when beyond control, injure the passengers in a preceding train.''

It will be observed that plaintiff did not content himself with a general allegation of negligence, but pleads specifically the different negligent acts which caused or contributed to his injury.

The answer was a general denial, to which was coupled a plea of contributory negligence. Reply was a general denial. Such were the issues.

Defendant alleges error upon the part of the trial court in giving instruction number 1 for plaintiff, which instruction is as follows:

''You are instructed that the defendant and its employees were bound to use that high degree of care which a reasonably prudent person in like business, would exercise under the same circumstances, in providing proper brakes for stopping or reducing the speed of a train in case it got loose from the cable on a dangerous incline, and on the part of defendant's employee in charge of the grip in keeping the grip with which the car was held to the cable properly adjusted, if you find there was a proper adjustment, for the purpose of enabling the cable to be properly seized and held by such grip, and on the part of the defendant's conductor in being at his proper post of duty, if you find there was a proper post of duty, for the use of such appliances, either brakes or hooks, as were provided for stopping the train, if you find any were provided, if it got loose from the cable, and in the use by the gripman of the brakes provided by the defendant for his use in so far as a failure in any of the above respects directly contributed to the injury, if any, of the plaintiff, as proximate cause therefor. And if you believe from the evidence that on or about the 22nd day of August, 1902, a train of cars of the defendant approached the top of an incline on Ninth street from Penn street down to the Union Depot and was carried over the brow of Penn street and started down the in-

cline, and that through the want of such care and fore-
sight as was reasonably practical on the part of the em-
ployees in charge of car number 129, the cable either
became entirely free from the grip by reason of the
want of such care in the adjustment of the grip, or
for the same reason the grip failed to hold on the cable
and thereupon the cars went on down the incline, pro-
pelled by their own weight and that such incline was a
place dangerous to the safety of passengers in case
the cars were not held by the grip to the cable, and that
the brakes provided on the train were so constructed
as to be insufficient for the purpose of holding said
cars on said incline, if you so find, and that same were
insufficient was known to the defendant, or by the ex-
ercise of reasonable care and diligence might have
been known to it at any time before starting such cars
down said incline and that the defendant had in use on
said incline cars equipped with brakes so constructed
as to be sufficient for the purpose of holding said cars
on said incline when not held by the cable and which
the defendant knew, or by the exercise of reasonable
care and diligence could have known were sufficient for
such purpose, and that the gripman of car 129 did not
exercise such care and foresight as was reasonably
practical on the part of such gripman, under the cir-
cumstances, in using the brakes provided, and that the
proper post of duty of the conductor, if you find there
was a proper post of duty for him in such cars, was at
the rear of said train near the hand-brake and a device
for dropping into certain loops a hook, which when
dropped would tend to stop or retard the speed of such
train, and you find that such conductor did not exercise
such care and foresight as was reasonably practical,
under the circumstances, with respect to being at such
post of duty, if you so find, and you find as a direct re-
sult of such circumstances a collision occurred between
such train and another train of the defendant in which
the plaintiff was riding as a passenger, and that the

plaintiff received injuries of the kind complained of by reason thereof, without fault on his part directly contributing thereto, then the plaintiff is entitled to recover in this action.''

Defendant likewise charges as error the action of the court in refusing to give instructions 15, 10, 12, 13 and 14, as were offered and requested by it. Said instructions are as follows:

''15. Even though you may believe that the employees did not stop the train so that the front thereof would be east of the center of Penn street, such fact, if it be a fact, is wholly insufficient to authorize you to render a verdict against the defendant on the issue so tendered in relation thereto, and you cannot find a verdict for the plaintiff on that ground.

''10. There is no evidence before the jury that the defendant failed to provide proper means to hold the grip train firmly attached to the wire cable and to stop the same when not attached thereto, and you cannot find a verdict for the plaintiff on that issue.

''12. There is no evidence before the jury that the employees did not properly handle the devices and appliances that were furnished for the purpose, and on that issue the plaintiff cannot recover.

''13. There is no evidence before the jury that the servants and employees caused one cable train to follow another down the incline before the train farthest down had gotten to a place of safety, and on that issue you cannot find for the plaintiff.

''14. There is no evidence before the jury that the proximate cause of the injury was the failure of either of the employees in charge of the train to be at their proper and required post of duty, and on that issue you cannot find for plaintiff.''

It further charges error in the admission of certain evidence, over objections duly made.

I. We will call specific attention to the evidence in discussing the points raised. But first we must de-

termine the proof required at the hands of plaintiff under the petition in this cause. The petition charges specific negligence and not general negligence, as plaintiff would have had the right to charge in this class of cases. A general allegation of negligence is all that is required in cases of accidents, where the relation of passenger and carrier exists. This general allegation of negligence is permitted upon the theory that the instrumentalities are in the hands of the defendant and he knows the condition thereof, whereas plaintiff does not or may not know them. Not only does the established rule permit a general allegation of negligence, but in making the proof it is sufficient to show an accident and the resultant injury, whereupon there is a presumption of negligence, and a prima-facie case for plaintiff is made. What we have said above applies to cases where there is a general allegation of negligence, but the rule is different where there are specific allegations of negligence. The rule as to proof is different, and the rule as to the presumption is different. General allegations of negligence are permitted because plaintiff, not being familiar with the instrumentalities used, has no knowledge of the specific negligent act or acts occasioning the injury, and for a like reason the rule of presumptive negligence is indulged. But, if plaintiff by his petition is shown to be sufficiently advised of the exact negligent acts causing, or contributing to, his injury, as to plead them specifically, as in this case, then the reason or the doctrine of presumptive negligence has vanished. If he knows the negligent act, and he admits that he does so know it by his petition, then he must prove it, and if he recovers it must be upon the negligent acts pleaded and not otherwise. In other words, the burden of proof is upon plaintiff as it would be in any other kind of a case. The rule of presumptive negligence and the rule allowing the pleading of negligence generally, are rules which grew up out of necessity in cases of this character and are

exceptions to the general rules of pleading and proof. Where plaintiff, by his petition, admits that there is no necessity, the reason for the rule *ex necessitate* fails, and with it the rule itself.

We have very recently gone over this question in the case of McGrath v. Railroad, 197 Mo. 97, and Orcutt v. Century Bldg. Co., 201 Mo. 424. The conclusions in these cases were reached upon a thorough investigation of all our recent cases, many of which are therein cited.

In McGrath Case, supra, l. c. 105, we said:

"But even if it were a case to which, under proper pleadings, the doctrine [*res ipsa loquitur*] would apply, yet in this case specific acts of negligence are charged and not general negligence. In such cases where the plaintiff chooses in the petition to allege specific acts of negligence, the rule of law places the burden of proving such specific negligence upon the plaintiff, and a recovery, if had at all, must be upon the specific negligence pleaded. [Hamilton v. Railroad, 114 Mo. App. l. c. 509; Ely v. Railroad, 77 Mo. 34; Leslie v. Railroad, 88 Mo. 50; Yarnell v. Railroad, 113 Mo. 570; Bunyan v. Railroad, 127 Mo. l. c. 19; Hite v. Railroad, 130 Mo. l. c. 136; McManamee v. Railroad, 135 Mo. l. c. 447; Bartley v. Railroad, 148 Mo. l. c. 139; Gayle v. Mo. Car & Foundry Co., 177 Mo. l. c. 450; Breeden v. Mining Co., 103 Mo. App. l. c. 179.]"

And in the Orcutt Case, supra, we further said:

"But the courts draw a distinction between cases wherein general allegations of negligence are found and those wherein are found specific allegations of negligence. We refer now more particularly to cases wherein the relation of carrier and passenger exists. The rule which shifts the burden of proof in such cases is founded on the theory that the railway company is in position to know the facts and to show the facts, whilst the passenger is not in such position. But if the plaintiff by his petition alleges the exact specific

acts of negligence, it is evidence that he also knows the facts, and so knowing them there is no reason for invoking the rule of presumptive negligence. The general rule, in cases other than the class above referred to, is that the plaintiff must establish his case by the preponderance of evidence, and in that class of cases the presumption of negligence is only indulged, in our judgment, for the reason aforesaid. However, if the plaintiff possesses knowledge of the facts, and is able to plead them specifically and in detail, the reason for the rule disappears, and with it the rule itself.''

So that in this case, in determining the sufficiency of proof, and the correctness of instructions, we will do so upon the theory that it was the duty of plaintiff to establish by proof, not by presumption, the act or acts of negligence which caused his injury.

If plaintiffs will persist in pleading specific negligence, they must be held to the rules of law applicable to cases of that character.

II. There is a number of contentions made by defendant as to the alleged erroneous action of the court in the giving of instruction number 1 upon behalf of plaintiff. The instruction is long and covers practically all of the alleged acts of negligence charged in the petition. Defendant claims that all, or at least a part, of these alleged acts of negligence were not shown by the evidence, and that there was error in including such in the instruction. Defendant asked instructions, hereinabove set out, the purpose of which was to withdraw from the consideration of the jury all of such alleged acts of negligence, upon which there had been no proof, as defendant considered it. Under these circumstances it will be better to take up instruction number 1 for plaintiff, along with the refused instructions of defendant.

(a) The first assignment of negligence in the petition, i. e., the failure to stop the train on the east side of Penn street, is not submitted to the jury in said in-

struction one, but defendant says that the whole matter should have been withdrawn from the jury as it requested in its refused instruction number 15, and that in the refusal of instruction 15 there was error. We are not prepared to say that the refusal of this instruction was error. It is true that there was no ordinance or printed rule of the company introduced requiring the stopping of trains on the east side of Penn street, but there is evidence that there were oral instructions to motormen to stop such trains on Penn street. Then further it is shown by the evidence, especially by the cross-examination of some of defendant's witnesses, that in going over the brow of the hill to the east of Penn street there was great danger of losing the cable from the grip. Now if the train was brought to a full stop on Penn street, and the cable chanced to be out of the grip, the train could not be again started so as to go on the incline below, until such cable was replaced. Under such circumstances, it was the part of prudence to bring the train to a full stop there. Again, the conductor had to get his signal there, and for that purpose there had to be a stop. We hardly think the refusal of such instruction was error. At least it was not such error as would justify a reversal.

(b)    The next assignments of negligence are what we have subdivided as two and three, and are as follows:

"And in not providing proper, sufficient and safe means to hold said other train firmly attached to said wire cable."

"And to stop the same when not attached thereto."

These are reached by defendant's refused instruction number 10. This instruction covers both assignments of negligence above quoted. Had it only covered the assignment numbered two, it would have been error to have refused it, for there is no evidence in the record showing a failure upon the part of the company to furnish sufficient and safe means to hold the train

firmly attached to the cable.  As to the third assign-
ment, there is some slight evidence that when the cable
is out, the train could be stopped even upon the incline,
by use of what they denominate as a rail brake.  There
is also evidence that most of the cars running over
this incline were equipped with rail brakes.  The car
in controversy had a ratchet brake and it is admitted by
defendant that such brake will not stop a car upon the
incline, where it is detached from the cable.  Of course
the great weight and mass of the testimony shows the
ratchet brake to be the best and safest device.  But as
we have said, there is some little evidence to the con-
trary, so that this is a question peculiarly within the
province of the trial court.  Under our practice, it is
the peculiar province of the trial court to refuse to sub-
mit such question, or if submitted, to refuse to permit
a verdict to stand upon such evidence.  As has been
often said the duties of the trial judge and of the ap-
pellate judge are quite different under these circum-
stances.  If a verdict is against the great weight of
the testimony it is the peculiar province of the trial
judge to so say and to promptly set the same aside, to
the end that justice may follow in each case.  [Tay-
lor v. Railroad, 163 Mo. l. c. 191; Haven v. Railroad,
155 Mo. 216; Baughman v. Fulton, 139 Mo. 557; Bank
v. Wood, 124 Mo. 72; Bank v. Armstrong, 92 Mo. 265;
McKay v. Underwood, 47 Mo. l. c. 187; Vastine v. Rex,
93 Mo. App. 93; Everman v. Eggers, 106 Mo. App.
732.]

It follows that there was no error in refusing said
instruction number 10, in its present form.  Had it
been presented without the clause, "and to stop the
same when not attached thereto," there would have
been error in refusing it.

(c)  The fourth assignment of error is as follows:
"And through the carelessness and negligence of the
defendant, its servants, agents and employees in not

propelling, handling and using said devices and appliances as were furnished for such purpose.''

. Defendant asks the withdrawal of this assignment of negligence by its refused instruction number 12, and charges error upon the part of the trial court in refusing said instructions. Under the evidence, however, mostly from the cross-examination of defendant's witnesses, the instruction was properly refused. The evidence shows that at the brow of the hill east of Penn street there was great danger of the cable leaving the grip; that it might leave the grip by the motorman opening the grip too wide, when he loosened the grip to make the Penn street stop; that it might leave the grip on account of a splice in the cable or on account of a loose strand on the cable; that the cable was not in the grip when the car was examined immediately after the accident. With this evidence the jury had the right to determine how the cable came to leave the grip. The evidence of the negligence of the gripman is meager, but sufficient to submit the question to the jury. There was no error in refusing this instruction.

(d)    The fifth assignment of negligence is: ''And in not being at their proper and required post of duty therefor.''

Defendant strikes at this assignment by its refused instruction number 14. This instruction should have been given. There is no question that the brakeman was at his post of duty, and we hardly think there was sufficient evidence upon the question as to whether or not the conductor was at his post of duty, to submit such question to the jury. For the plaintiff it shows that the train slowed up and had about stopped. That the conductor got off and went to the signal box to get his signals as to other trains ahead. It was his duty to go to this box and get his signal. This was as much his duty as to be on the rear of the train when going down the incline. Again when he left the train, there was every evidence that it would make the

usual stop and he had not reached the point where he was required to be on the rear of the train to drop the hook put there for the purpose of assisting in stopping the train on this incline. In our judgment there was no evidence of negligence upon the part of the conductor and that both he and the motorman were at their respective places of duty, the motorman at his grip and the conductor at the signal box getting his signal. Defendant's instruction should have been given, and this element should have been left out of plaintiff's instruction number 1.

(e) The sixth assignment of negligence reads: "And through the carelessness and negligence of the defendant, its agents, servants and employees, in causing one cable train to follow another down said incline, before the train farthest down said incline had gotten to a place of safety, so that through such defects in such means and in the use thereof a following train would, when beyond control, injure the passengers in a preceding train."

Defendant seeks to exclude that by its refused instruction number 13. This instruction was properly refused. As said in division "c" above, the occasion of this accident might have been the negligence of the motorman or gripman, in opening the grip too much at the brow of the hill east of Penn street, and if so this might have been the cause of the train following another before the former reached the foot of the incline.

(f) It is further urged that the instruction in the nature of a demurrer should have been sustained. At the close of plaintiff's case, there was but one question which should have been submitted to the jury, and that is the sufficiency of the appliances to stop a car upon the incline with the cable out of the grip. Had the cable been in the grip no accident could have occurred. There was evidence that the rail brake would stop the train and that defendant had such and knew

that such brakes were required for that line. However, the cross-examination of defendant's witnesses added some to plaintiff's case, and there is no question as to the trial court being right in refusing this instruction at the close of all the testimony.

III.   The plaintiff introduced Drs. Haldeman and Blair as expert witnesses. To. Dr. Haldeman this question was asked, and this answer given:

Q.   "If a man prior to this accident was free from pains in the head, was able to sleep well and was normal in his health in that he was free from pain and inconvenience in the head and back, and after an accident that he would receive in a street car collision where two cars came together with considerable force, sufficient to throw him plump out of the car, and by reason of such collision and throwing out of the car he received various bruises, and is in the condition you saw Mr. Roscoe, with bruises on his head, hands and legs, and it developed shortly after that this man suffered from pains in the head and back, which he had not had prior to the occurrence, to what would you attribute the cause of the pains in his head and back and his inability to sleep, as he formerly was able to do?"   A. "Why, I should say it was due to the injury which he received at that time."

To Dr. Blair was propounded the following question, to which he gave the following answer:

Q.   "Doctor, if a man were riding in the front seat of one of our ordinary cable trains, such as are operated here in the city, and while so riding the train upon which he was riding was struck from the rear by another train, with sufficient violence to throw him out of the seat and out of the car and possibly over the dash board or the front railing of the car, and onto a wooden platform on the incline, causing him to roll over until stopped by expiration of the force of the throwing, and he received injuries such as you found

existed in Mr. Roscoe, could that result have followed from such experience?'' A. ''Yes, sir.''

These questions were objected to upon various grounds, among others that they required the witnesses to invade the province of the jury and find the ultimate fact to be found by the jury, *i. e.*, whether or not plaintiff's present condition was the result of injuries received in the accident. This, too, in view of the fact that plaintiff had been previously injured and hurt prior to this accident and was claiming loss of sensation from the hips down as well as loss of sexual powers. The action of the court in permitting these questions to be answered was error. [Taylor v. Railroad, 185 Mo. 239.]

In this case, very similar to the one at bar, upon this question, MARSHALL, J., says:

''To the trained legal mind there is a very essential difference between permitting an expert to give an opinion and permitting him to draw a conclusion. The one is the province of a witness—the other is, in the first instance, the special prerogative of the jury.

''And when a witness is thus permitted by the court to invade the province of the jury, it goes to the jury with the endorsement of the court, and is calculated to make the jury believe that it is proper for the witness to find the fact instead of the jury doing so.''

Again, in the case of Longan v. Weltmer, 180 Mo. 322, wherein the writer herein was the trial judge, the same point came up, but in that case the objection to the hypothetical question was a general one. The motion for new trial was overruled solely on the ground that the objection was too general, and to this view the Supreme Court adhered. It is clear from the language used by BURGESS, J., in that case, that had the objection been specific, as in the case at bar, there would have been a reversal of the judgment. The language of Judge BURGESS follows:

"It is also insisted that the hypothetical questions were all improper for the reason that the experts were permitted by them to tell the jury that in their opinions the particular treatment produced the injury, thus usurping the province of the jury, whose duty it was to pass upon that question. But this objection cannot be considered by this court for the reason before indicated in regard to the generality of the objection to its admission."

In fact counsel for respondent in the Longan case, both on the motion for new trial in the court *nisi*, and in the Supreme Court, practically admitted the error of the question, but urged the insufficiency of the objection. The question is on all-fours with those in the case under consideration.

Hypothetical questions should never be so framed as to call from the witness the conclusion of fact, which it is the province of the jury to draw. These questions and especially the one to Dr. Haldeman did that.

There are other questions raised in this record of six hundred printed pages but in the view we take of the case it must be reversed and remanded, and many of them will likely not be involved in any future record.

For the errors above pointed out, the judgment is reversed and the cause remanded. *Valliant, P. J.,* and *Lamm, J.,* concur; *Woodson, J.,* not sitting.