J. M. HOWELL, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 14, 1910.

1. **MASTER AND SERVANT:** Railroads: Injuries to Servant: Unusual Jerk of Train: Res Ipsa Loquitur: Specific Negligence Pleaded: Pleading. In an action against a railroad company for injuries to a brakeman alleged to have been caused by an unusual jerk of the train on which he was at work, where the petition alleged the injury was due to a sudden impulse carelessly given by the engineer to the locomotive, plaintiff did not rely on the doctrine of *res ipsa loquitur*, but, having charged a particular act of negligence, he was bound to prove that act in order to make a case.

2. ——: · ——: ——: ——: Conjecture as to Cause of Jerk: Evidence. Testimony by plaintiff that the jerk might have been avoided by the engineer's turning on ten or fifteen pounds of steam, instead of one hundred pounds, though he knew nothing of what the engineer actually did, was erroneously admitted, since it implied the engineer turned on an excessive head of steam, and plaintiff, knowing nothing of what was actually done, was merely speculating about what was the cause of the jerk, among several possible causes.

3. ——: ——: ——: ——: Sufficiency of Evidence. There being no postive evidence the engineer did anything to cause the engine to start forward with an unusual jerk, and the evidence tending to prove the unusual jerk of the train might have been from other causes, there was nothing in the record from which the jury could do more than conjecture the engineer started the engine forward with too sudden a movement, as alleged in the petition.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

REVERSED AND REMANDED.

*James L. Minnis* and *Robertson & Robertson* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action. The petition charges that the engineer carelessly, negligently and suddenly and unexpectedly started his engine forward with an unusual jerk or start and thereby caused the caboose to be jerked, jarred and moved. The words "carelessly, negligently" add nothing to the facts alleged (Waldhier v. Railway, 71 Mo. 514) and leave the petition standing to the effect that the engineer suddenly started his engine forward with an unusual jerk or start. Admitting this to be true, the fact that a train is jerked in an unusual manner is not negligence. Saxton v. Railroad, 89 Mo. App. 494; Holt v. Railroad, 84 Mo. App. 443; Saxton v. Railroad, 98 Mo. App. 494; Wendall v. Railroad, 100 Mo. App. 561; Hite v. Railroad, 130 Mo. 132, and numerous other cases. (2) The court erred in refusing to direct a verdict for the defendant at the close of the evidence for the plaintiff. (a) The petition sets out the specific act of negligence of the engineer in that he carelessly, negligently, suddenly and unexpectedly started his engine forward with an unusual jerk or start. Nothing of this kind was proven by direct evidence, and the allegations being specific, negligence could not be inferred. Roscoe v. Railroad, 202 Mo. 576; Orcutt v. Building Co., 201 Mo. 424; McGrath v. Transit Co., 197 Mo. 97; Bartley v. Railroad, 148 Mo. 97; Yarnell v. Railroad, 113 Mo. 570; Hamilton v. Railroad, 114 Mo. App. 504. (b) There was no direct evidence on behalf of the plaintiff that the engineer was guilty of the act of suddenly starting the engine forward as alleged in the petition; and

the plaintiff being a servant and under the law defendant not being required to exercise the highest degree of care for his safety and all the evidence being readily accessible to the plaintiff, the doctrine of *res ipsa loquitur* does not apply, and no negligence was proven. Wigmore on Ev., sec. 2509; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Orcutt v. Bldg. Co., supra; Klebe v. Distilling Co., 207 Mo. 480; Bowen v. Railroad, 95 Mo. 268; Oglesby v. Railroad, 177 Mo. 272; Fuchs v. St. Louis, 167 Mo. 620; Patton v. Railroad, 179 U. S. 658; Railway v. Barrett, 166 U. S. 617; McGrath v. Railroad, 197 Mo. 104; Beebe v. Transit Co., 206 Mo. 419; Deckerd v. Railroad, 111 Mo. App. 117. (c) The evidence of the plaintiff showed that the jerk of the caboose could have been caused without and independent of any act of the engineer in suddenly starting the engine forward. It could be logically inferred that the jerk was caused by the running in and out of the slack, which plaintiff's own testimony shows occurred. Therefore, no negligence in the handling of the engine could be inferred from the mere fact that the caboose was jerked. 2 Labatt on Master and Servant, sec. 837; Smillie v. Dollar Store, 47 Mo. App. 406; Rutledge v. Railroad, 110 Mo. 312; Warner v. Railroad, 178 Mo. l. c. 134; Green v. Railroad, 72 S. Car. 398; 5 Am. S. Eng. Am. Cas. 165; Spiro v. Transit Co., 102 Mo. App. 262; Beebe v. Transit Co., 206 Mo. 419; Epperson v. Cable Co., 155 Mo. 346; Patton v. Railroad, 179 U. S. 658, 45 L. Ed. 361. (d) The courts will take judicial notice of the fact that jerks and jolts are incident to the operation of freight trains and such jerks being usually incident to the train's operation, the happening of the jerk does not import any negligence and without direct and positive evidence of negligence of the engineer in the manner charged in the petition, no recovery can be had. The only inference to be drawn in the absence of a positive showing of negligence would be that the jerk was merely incident to the operation of the train. Hedrick v. Railroad, 195 Mo. 104; Guffey

v. Railroad, 53 Mo. App. 466; Wait v. Railroad, 165 Mo. 612; Erwin v. Railroad, 94 Mo. App. 289; Portuchek v. Railroad, 101 Mo. App. 52.

*E. Rosenberger & Son* and *P. H. Cullen* for respondent.

(1)    That negligence may be inferred from circumstances there is no doubt in reason or upon authority, and likewise the due care of the person injured may be proven by circumstances.    Lynch v. Railroad, 108 Mo. 1, 3 Ency. Ev., p. 103; 6 Thomp. Neg. (2 Ed.), secs. 7863, 7912; Black v. Telephone Co., 26 Utah 451; Rine v. Railroad, 100 Mo. 228; Harned v. Railroad, 51 Mo. App. 482; Maynes v. Railroad, 54 Mo. App. 585; Rosenfield v. Arrol, 44 Minn. 393; Railroad v. Gunderson, 51 N. E. 708; Canal Co. v. Akeyson, 63 N. W. 921; Lighthouse v. Railroad, 54 N. W. 321; Stockyards v. Conover, 41 Neb. 677.    (2)    There was strong and substantial evidence of the mismanagement of the train over which defendant had immediate and exclusive control, and with the running of which plaintiff had nothing whatever to do.    Tinkle v. Railroad, 212 Mo. 445; Mitchell v. Railroad, 132 Mo. App. 143; Coudy v. Railroad, 85 Mo. 85; Clark v. Railroad, 127 Mo. 210; Blanton v. Dold, 109 Mo. 64; Dixon v. Railroad, 109 Mo. 413; Turner v. Haar, 114 Mo. 335; Burger v. Railroad, 112 Mo. 238; Harris v. Railroad, 89 Mo. 233; Ward v. Steffin, 88 Mo. App. 571; Linn v. Bridge Co., 78 Mo. App. 111; Whitehead v. Railroad, 99 Mo. 263; Sackewitz v. Biscuit Co., 78 Mo. App. 144; Hupsley v. Railroad, 88 Mo. App. 348. (3)    The proof of the sudden and unusual jolt of the train, the injury to plaintiff, the attendant circumstances and the unusual physical facts raise a presumption of negligence on the part of defendant, without proof of the exact way in which the train was mismanaged. The doctrine of res ipsa loquitur applies between master and servant, where the servant is not at fault and in no

manner was connected with the operation of the train. Tinkle v. Railroad, 212 Mo. 445; Mitchell v. Railroad, 132 Mo. App. 143; St. Clair v. Railroad, 122 Mo. App. 528; Haas v. Railroad, 111 Mo. App. 706; Blanton v. Dold, 109 Mo. 64; Lee v. Railroad, 112 Mo. App. 372; Miller v. Ocean Steamship Co., 118 N. Y. 199; Pasey v. Schooville, 10 Fed. 140; Sackewitz v. Mfg. Co., 78 Mo. App. 144; Dougherty v. Railroad, 9 Mo. App. 484. (4) A servant assumes those risks alone which remain after the master has exercised ordinary care. It is the duty of the master to exercise reasonable care, commensurate with the nature of the business, to protect a servant from the hazards incident to it. Charlton v. Railroad, 200 Mo. 443; Curtis v. McNair, 173 Mo. 270; Williams v. Railroad, 119 Mo. 316; Rodney v. Railroad, 127 Mo. 676; Herdler v. Stove & Range Co., 136 Mo. 3. (5) The rule has been frequently announced that the failure of a party to call a friendly witness, having personal knowledge of the facts in issue, raises a presumption or inference that the witness's testimony would have been detrimental to him. This rule has been applied where a master or employer failed to call his servants or employees, as where a railway company failed to call the crew in charge of a train on account of the negligent management of which a recovery was sought. Am. and Eng. Ency. Law, p. 1261; Railroad v. Ellis (C. C. A.), 54 Fed. Rep. 481; Railroad v. Wall, 75 Ga. 282; Railroad v. Culler, 75 Ga. 704; Railroad v. Holcombe, 88 Ga. 9; Railroad v. Douglass, 94 Ga. 547; Railroad v. Morrison, 102 Ga. 319; Day v. Railroad, 35 La. Ann. 694; Fonda v. Railroad, 71 Minn. 438, 70 Am. St. Rep. 341; Hicks v. Railroad, 47 N. Y. App. Div. 479; Reyburn v. Railroad, 187 Mo. 575; Lynch v. Railroad, 208 Mo. 1; Baldwin v. Whitcomb, 71 Mo. 658; Kirby v. Talmadge, 160 U. S. 379; Roney v. Moss, 74 Ala. 300; Wood v. Hally Mfg. Co., 100 Ala. 326, 46 Am. St. Rep. 56.

GOODE, J.—Personal injury case. The accident occurred January 30, 1907, after dusk and on a freight train of defendant company running at the time over the line of the Missouri, Kansas & Texas Railroad Company near Hannibal. The train was composed of forty-two freight cars, one passenger coach and a caboose, the two latter cars being connected and the caboose at the rear of the train. The passenger coach was equipped with air-brakes, but several freight cars ahead of it were not; others still further ahead and near the engine were. Hence the rear of the train was not so equipped with air-brakes it could be controlled from the engine; a fact not relevant to the issues presented, but shown by the testimony. There was a general descent in the grade of the railroad from seven or eight miles or more south of Hannibal to the depot at that point, but this descent was not uniform and at several places there were short depressions in the grade followed by elevations. The train had moved down one of those slight depressions, the engine and front part had climbed a slight rise, and the engine had passed over the crest, when there was a sudden jerk of the train which caused plaintiff's injury. He had been sitting in the cupola of the caboose but had climbed down to put out a red light at the rear to warn any following train, because his train was behind time and might be overtaken. Just before the jerk plaintiff had stooped to the floor to get the light, and at the instant of the jerk had just arisen into an erect position. The jerk turned him a complete somersault, broke his kneecap and rendered him permanently lame. It likewise threw the conductor of the train to the floor of the caboose, but did not injure him. Plaintiff, who had had long experience in the work of a brakeman and some in handling engines, testified the jerk was just as fast a movement as a man could get; he could not see one faster; was the worst he ever saw; was a wonder it did not tear out the side of the caboose; that the cars of a freight train would "bunch together" as the

train went down a grade and then up another; would continue to bunch until the engine passed over the crest of a rising grade, when the slack would run out and there would be a jerk. He testified the slack between each pair of cars was four or five inches, showing the total slack in a train the length of the one in question was six or seven feet; that the jerk he experienced was greater than was common to the running out of slack in a train of the length of the one he was on; that it could have been avoided "if he (meaning the engineer) had handled his engine more carefully when he gave the steam; if he had given the steam easy instead of hard; say gave ten or fifteen pounds of steam instead of giving her a hundred; he could have avoided it and there would be no jerk." That testimony was objected to because the witness knew nothing about what the engineer had done and it was mere speculation on his part. Plaintiff said the jerks he had experienced were not ordinarily sufficient to throw him off his feet. The conductor testified he was thrown down by the jerk; had experienced harder ones from the slack running out of trains; the train was going slow; at this point there was a slight grade and it being an extremely long train, the slack ran out with considerable force after the engine had climbed the upgrade; more than was common, and this produced a jerk of the caboose; that the jerk was unusual for freight trains, but was usual with a train of that length; was an unusual jerk, but he would not say it was extraordinary; did not remember to have experienced similar jerks in passing over the track with trains like the one in question. The head brakeman, who was on the top of a car near the engine, testified he felt no jerk, and the fireman testified the engine was allowed to run down the grade after it had climbed to the crest without putting on any steam; that the steam was not worked, nor was a sudden movement forward made by the engine. Such, in substance, was the testimony concerning the occurrence of the accident. Plaintiff re-

mained in the hospital until May, when he was permitted by his physicians to go home, but was instructed not to walk on his injured limb any more than was necessary to keep the joint from becoming stiff. After he returned home, while walking about one day, the kneecap was fractured again. Medical testimony goes to show the first fracture did not unite by the knitting of the bone, but by a fibrous union common in such cases. The petition alleges as ground of recovery, the following:

"Plaintiff further says that when said train was about one and one-half miles south of Hannibal it had run down one of these descending grades or depressions, and after the engine had crossed and passed over the descending grade or depression aforesaid, it was being pulled forward over an ascending grade and all the cars in said train had pressed forward and were close to each other and close to said engine, and while the train was in this condition, with the cars close together as aforesaid, about the time the engine reached the top of this short ascending grade, the engineer in charge of said train carelessly, negligently and suddenly and unexpectedly started his engine forward with an unusual jerk or start and thereby caused the rear caboose in said train to be violently jerked, jarred and moved.

"Plaintiff says that he was standing in the caboose on said train and as a result of the way the engine was handled as aforesaid and the consequent jaring and jerking of the caboose, he was violently thrown face forward to the floor of the caboose and as a direct result of said fall his right kneecap or patella was broken and that his body and limbs were bruised, scarred and injured, and his entire nervous system disordered, shocked and greatly injured and that his injuries are permanent and incurable."

The defense was a general denial, assumption of the risk and contributory negligence.

There is a dearth of testimony to prove the negligence alleged; *i. e.*, that the engineer carelessly, suddenly and unexpectedly started his engine forward with an unusual jerk. The fireman said the engine was let roll down the grade after it had passed the swell in the track and no steam power was used. This statement, which was the only one given by any witness regarding the management of the engine, was contrary to the averment of the petition, but the jury was not bound to believe it. The contention is, plaintiff established the cause of action alleged by circumstances. A particular act of negligence having been charged, plaintiff did not rely on the doctrine of *res ipsa loquitur* to prove it prima facie, though counsel for defendant argues he did. Plaintiff contends there were circumstances in evidence, other than the mere accident, from which the jury might have inferred the engineer was negligent as charged, instead of that the accident established said dereliction. In view of the decisions of the Supreme Court in Wait v. Railroad, 165 Mo. 612, 65 S. W. 1028 and Hedrick v. Railroad, 195 Mo. 104, 93 S. W. 268, we have experienced some difficulty in finding in the record facts to support a finding of negligence of any kind. The train in question was twice as long as the one on which Hedrick was hurt and presumably had twice as much slack; there was no proof the roadbed was out of repair, of incompetency on the part of the engineer nor of any defect in the appliances of the train, except the lack of connection of the rear of the train with the air-brake apparatus in front, so the cars in the rear could be controlled and the "bunching" of them properly regulated. Maybe the shock was more violent than in those in the cited cases. We will not say there is no proof of any negligence which could have caused the jar, but only that there is none of the careless act alleged to have caused it. Neither will we say that on an allegation of general instead of specific negligence there would have been no case or none if relief had been asked be-

cause of the defective arrangement of the brakes. Plaintiff had put his complaint on an alleged sudden impulse carelessly given by the engineer to the locomotive and was bound to prove that act in order to make a case; moreover it was the only basis of recovery allowed in the instructions. [Roscoe v. Railroad, 202 Mo. 576, 588, 100 S. W. 1086.] We find not a trace of proof the engineer did anything of the kind. It is true plaintiff was erroneously allowed to testify, we think, that such a jerk might have been avoided by the engineer turning on ten or fifteen pounds of steam as the locomotive ran down the grade, instead of one hundred pounds. This testimony implied the engineer had turned on an excessive head of steam, though the plaintiff knew nothing of whether he had or not, but was merely speculating about what was the cause of the jar among several possible causes; for the evidence tends to prove it might have been prevented by a proper manipulation of the air-brakes, if the rear part of the train had been under control; also that it could happen from the running out of the slack in the ordinary way. There is not a fact in the record from which the jury could do more than conjecture the engineer started the engine forward with too sudden a movement, thereby imparting a jerk of extraordinary violence to the rear of the train; and to adopt this conjecture, they were compelled to disregard the positive testimony of the fireman.

The judgment is reversed and the cause remanded. All concur.