GERTRUDE DERSCHOW v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—95 S. W. (2d) 1173.

Division Two, June 30, 1936.

*T. E. Francis, B. G. Carpenter* and *Wm. H. Allen* for appellant.

*Charles M. Ryan* and *Robert L. Aronson* for respondent.

BOHLING, C.—Appellant, St. Louis Public Service Company, a corporation, appeals from a judgment awarding respondent, Gertrude Derschow, $10,000 damages for injuries sustained in a fall while

alighting from one of appellant's street cars and occasioned by certain alleged negligent acts of appellant's employees.

Admitting plaintiff made a submissible case, appellant asserts error in that respondent's instruction on the measure of damages provided, if the jury found for respondent: "then, in estimating her damages you will take into consideration the physical injury sustained, whether temporary or permanent, if any, . . ." on the ground there was no substantial evidence upon which to base an award for permanent injuries.

Respondent's evidence established that she sustained her injuries on October 2, 1930; that prior thereto her health had been good; that practically constantly since the accident she had been and was, at the time of trial, suffering pain, and had done no hard work since the accident; and that she was thirty-three years of age at the time of trial (June, 1933). Dr. Harmon, her physician, testified that the visible injuries suffered by respondent consisted of skin abrasions on her arms, and shoulders, and slight skin abrasions on the knees; that respondent complained of pain in her abdomen; that respondent's abdomen was distended; that she complained of bleeding and vomiting and did bleed and vomit, and, while he would not term it a hemorrhage, there was a constant oozing of blood from the vagina; that he treated respondent once or twice at her home and thereafter at his office and on February 18, 1931, operated on respondent to find out what was causing the bleeding; that he found "the stomach condition minor—didn't amount to anything;" that both ovaries were prolapsed in the cul-de-sac; that he shortened the ligaments of plaintiff's uterus; that he removed her appendix ("Q. Removing the appendix had nothing to do with these other injuries, did it? A. No, sir"); and that respondent was in the hospital about eighteen days. Dr. Harmon testified that the distended condition of respondent's abdomen, the emission of blood from respondent's vagina and the prolapsed condition of respondent's ovaries might or could have resulted from respondent's fall. The only express testimony in the record bearing on the permanency of any of the foregoing pathological conditions was adduced immediately following testimony by Dr. Harmon concerning an examination made of respondent two or three weeks prior to the trial in which he states respondent "still complains of that bleeding following the distressed condition of her stomach and periodical bleeding, but not as profuse as what she had had." It reads:

"Q. Now this condition you described her as suffering from, doctor, in your opinion is it a permanent condition? A. It very often takes time for a condition of that kind to clear up.

"Q. I mean in your opinion is it permanent? A. It is permanent up to this time. I don't know how long it will last.

"Q. Well, I mean have you an opinion—

"Mr. Dearing: The doctor has expressed an opinion, if your Honor please. This is cross-examination of his own witness. The doctor has answered the question.

"Mr. Kane: I don't care to be shown up that way.

"The Court: He has answered he can't state.

"Mr. Kane (Q): Did you say whether or not, in your opinion— have you got an opinion on this? A. Well, I wouldn't say positive the time it would take for a condition of that kind to clear up, because it is hard telling.

"Q. Sir? A. It is hard telling how long a condition of that kind will last.

"Q. Have you an opinion as to whether it is permanent or not?

"Mr. Dearing: I object to that as repetition.

"The Court: Let him answer the question again. [Exception duly saved.]

"A. Well, it has lasted quite a while and I would almost say it was permanent.

"Mr. Dearing: I ask that be stricken out; that is speculative— almost say.

"The Court: It will be overruled. He is an expert. [Exception duly saved.]"

The quoted portion of respondent's instruction on the measure of damages permitted the jury to find that respondent had sustained permanent injuries and to take such permanent injuries into consideration in awarding damages. The jury returned a verdict for $15,000 and respondent entered a *remittitur* of $5,000 as a condition to the overruling of appellant's motion for new trial. The only direct testimony adduced to sustain any award for permanent injuries was the statement of Dr. Harmon, speaking of respondent's complaint that the bleeding continued: ". . . I would almost say it was permanent." This is not a statement that the condition is permanent or a statement of an opinion to that effect. His previous testimony to the effect he did not know how long it would last; that it was hard telling how long it would continue, and that he would not say positive the time it would take to clear up, indicates that, from his knowledge of respondent's condition and her complaint to him, he was in doubt as to the future duration of the condition; and the effect of his testimony as a whole is that the permanency of said condition throughout life remained within the realm of conjecture and speculation. Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 1164, 61 S. W. (2d) 328, 334, quoted and followed in Weiner v. St. Louis Public Service Co. (Mo. en banc), 87 S. W. (2d) 191, 192(1), states:

"'To justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as

amounts to a reasonable certainty that they will result from the original injury. To say of a thing it is permanent means that it will continue regardless of a contingency or fortuitous circumstances.' [Lebrecht v. United Rys. Co. of St. Louis (Mo.), 237 S. W. 112.] Proof of a condition which may cause future trouble is not necessarily proof of a permanent injury, the former may persist after the trial but not continue to exist permanently while the latter is a physical or mental impairment or disability which will last throughout life, and there is a distinction between damages which may reasonably result in the future and damages allowable as for a permanent injury. [Bante v. Wells (Mo. App.), 34 S. W. (2d) 980; Stahlberg v. Brandes (Mo. App.), 299 S. W. 836; Colby v. Thompson (Mo. App.), 207 S. W. 73.] To recover damages for permanent injury the permanency of the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor.''

Respondent contends Nance v. Lansdell (Mo. App.), 73 S. W. (2d) 346, holds testimony of a physician that it is difficult to state whether the injury would be ''permanent or not for life; it is a permanent impairment at the present time'' (l. c. 350[10]) is sufficient to submit the issue of permanency to the jury. A reading of that case shows counsel are mistaken as to the effect of the ruling. The admissibility of the testimony was the issue under discussion. The plaintiff's case was submitted on one instruction only (l. c. 349); and nowhere in the report of that case do we find a discussion of the sufficiency of the evidence to sustain or any instruction authorizing an award for permanent injuries.

Respondent, in her brief, states ''the operative scar and the shortening of the ligaments around the ovaries are permanent and life-long consequences of appellant's negligence.'' A reading of respondent's petition and the evidence clearly indicates respondent was proceeding at the close of the evidence upon the theory that an award for permanent injuries was warranted under the testimony of Dr. Harmon with reference to the ''oozing'' of blood from the vagina and not on the theory of any permanency of said scar and shortening of said ligaments. The petition alleges the permanency of the ''injuries'' (not the effects of the operation) only, and the record is silent upon the duration of the operative scar and as to whether or not the shortening of the ligaments impaired to any degree their functions. The only skin abrasions shown to have been sustained by respondent, a female, were on the arms, shoulders and knees. No abrasions, bruises or discolorations on or about respondent's abdomen are disclosed by the testimony. The operation was performed more than four months subsequent to the accident. Dr. Harmon testified he

operated to ascertain the cause of the bleeding; that the condition of the stomach did not amount to anything; that the operation disclosed the ovaries in a prolapsed condition, and he shortened the ligaments of respondent's uterus; and that, although not occasioned by respondent's fall, the appendix was removed. While, in the instant case, the bleeding immediately following the fall justifies an inference by a layman that it resulted from the fall [Meyers v. Wells (Mo.), 273 S. W. 110, 116(6); Edmondson v. Hotel Statler Co., 306 Mo. 216, 236(V), 267 S. W. 612, 617(10)], the record fails to disclose that the physician was aware of the prolapsed condition of the ovaries or any condition of the appendix justifying its removal until the operation. Under these attending circumstances, any inference by a layman that the prolapsed condition of the ovaries resulted from the fall would be but mere guess, conjecture or speculation, and the expert's testimony that said pathological condition *could* or *might* have resulted from the fall does not meet the burden resting on respondent to establish the necessary causal connection. [Kimmie v. Terminal Railroad Assn., 334 Mo. 596, 603(2), 66 S. W. (2d) 561, 564 et seq., and cases cited; Cox v. Missouri-K.-T. Railroad Co., 335 Mo. 1226, 1235(2), 76 S. W. (2d) 411, 415(4); Scanlon v. Kansas City, 336 Mo. 1058, 1064(1), 1066(3), 81 S. W. (2d) 939, 940(1, 2), 941(6).] The record, therefore, fails to establish the essential causal connection between the shortening of said ligaments and any negligence of appellant.

Other issues presented by appellant are likely to not occur upon a retrial.

Considering the case as a whole, the judgment is reversed and the cause is remanded. *Cooley* and *Westhues*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.