# OCTOBER, 1939.

LOUISE HUTCHISON, RESPONDENT, v. MOERSCHEL PRODUCTS COMPANY, A CORPORATION, APPELLANT.—133 S. W. (2d) 701.

Kansas City Court of Appeals. November 20, 1939.

*J. R. Baker, Harris, Price & Alexander* and *Frank G. Harris, Jr.,* for appellant.

*Elmore G. Crowe* and *Irwin, Bushman & Buchanan* for respondent.

SPERRY, C.—Louise Hutchison, plaintiff, in a suit against Moerschel Products Company, defendant, sought and obtained a judgment against defendant for damages as a result of drinking a bottle of Coca Cola containing a dead mouse. Defendant appeals.

Plaintiff, a young married woman who lived with her husband in Jefferson City, testified to the following: That on March 21, 1939, plaintiff purchased from Jobe's store six bottles of Coca Cola contained in a carton, and, about noon, proceeded to drink a bottle while she read; that she poured the contents of the bottle, from time to time as she read and drank, into a glass from which she drank; that after having drunk a large part, if not all of the Coca Cola, she discovered a dead mouse in the bottom of the bottle; that she immediately took the bottle to the apartment of a Mrs. Rollman, in the same building, and showed the bottle and the mouse to her; that the mouse was curled around and pressed against the bottom of the bottle; that its fur oozed Coca Cola and the mouse was stuck to the bottom of the bottle; that shortly after returning to her apartment she became nauseated and vomited for several hours thereafter, was treated by a physician that day and on two other succeeding days, remained in bed for a period of four days, was unable to do her work for two months, and that, at the time of the trial she was suffering from nervousness and became violently nauseated whenever she thought of the incident or attempted to drink bottled beverages. She identified a bottle, containing a dead mouse, which was introduced in evidence, as the bottle from which she drank the Coca Cola and which she placed on the kitchen cabinet when she returned to her rooms form Mrs. Rollman's. She also identified two pictures of a Coca Cola bottle containing a dead mouse as pictures of the bottle in question and stated that they were taken in her presence.

Mrs. Rollman testified that plaintiff brought a Coca Cola bottle containing a dead mouse to her apartment on March 21 and exhibited same to her; that the mouse was pressed down and curled around the bottom of the bottle; that its fur oozed Coca Cola; and that she, later, that day, visited plaintiff's apartment and found her sick and vomiting.

Plaintiff's husband testified that his wife called him and told him of the incident and that he went home where he found plaintiff ill; that she remained in bed for four days and was unable to perform her household duties for a period of two months; that representatives of defendant were called and came to plaintiff's home and were shown the bottle containing the mouse.

Mrs. Irene Jobe, of Jobe's store, identified a picture of a carton as

being a fair representation of the cartons which Jobe's store purchased from defendant company. She testified that she and her husband operated the store from which plaintiff had stated that she bought the Coca Cola in question; that they bought no Coca Cola from any person or firm other than defendant who was the only dealer in Jefferson City; that defendant's truck driver always delivered the product, placing the cartons already filled, on display in the store, and collected for them; and that "this order" meaning the order sold to plaintiff, "was a carton of six I'm pretty sure of that."

A physician testified concerning the nature, cause and extent of plaintiff's illness.

It will become necessary later, to make further reference to the evidence, but we pause here to discuss defendant's contention that plaintiff failed to make a submissible case.

Defendant contends that the court erred by refusing to sustain its offered demurrer to the evidence, for two reasons, the first being that "the evidence did not establish that the defendant manufactured and bottled the bottle of Coca Cola in question."

Defendant's superintendent testified that defendant was, at the date of trial, manufacturing Coca Cola in Jefferson City and had had the exclusive franchise to do so since 1922. There is no evidence in the record which tends to contradict the direct evidence of Mrs. Jobe to the effect that Jobe's store never at any time bought any Coca Cola for re-sale except from defendant. Plaintiff testified that she bought the bottle in question from Jobe's store, and Mrs. Jobe's testimony corroborated this. The evidence being in this State we are required to apply the well-known rule that, in considering a demurrer to the evidence, such evidence as is favorable to plaintiff must be accepted as true and that every reasonable inference which can be drawn therefrom must be drawn in support of plaintiff's position, in order to sustain the court's action in overruling the demurrer. The only *reasonable* inference to be drawn from the above facts is that defendant manufactured and sold the bottle of Coca Cola in question.

Defendant urges, as a second reason why its demurrer should have been sustained, that "the evidence did not establish that the dead mouse was in the Coca Cola at the time the bottle left the possession and control of the defendant." The evidence is undisputed that the bottle was capped when plaintiff opened it in her home for consumption; that she started drinking it at once and kept the bottle in her immediate possession and presence until the mouse was discovered; and that the mouse was curled around and pressed down to the bottom of the bottle and its fur was thoroughly soaked with, and oozed, Coca Cola when it was discovered. The reasonable inferences to be drawn from this undisputed evidence are that the mouse got into the bottle a sufficient length of time prior to its discovery to become "pressed down and curled around" the bottom of the bottle; that if the mouse

had run into the neck of the bottle while it sat on the table in the presence of plaintiff (the only explanation suggested by defendant), the condition of its body would not have been as it was shown to be upon discovery. Since the evidence discloses that all bottled Coca Cola produced by defendant is capped before leaving the factory, the mouse must have been inside the bottle when it left defendant's plant.

We therefore hold that the trial court committed no error in overruling defendant's demurrer to the evidence.

Complaint is next made that the court erred in permitting witness Benson to testify that he found a dead mouse in a bottle of Coca Cola purchased from defendant during the summer of 1938. Defendant's counsel, in his opening statement, had announced that its evidence would prove that it would have been impossible for a mouse to get into a bottle of Coca Cola produced at defendant's plant, in view of the method of manufacture followed by it, the type of machinery used, and the careful inspection practiced. Defendant introduced much evidence in support of this declaration. Defendant's manager testified in detail regarding the various steps followed in cleansing, filling and inspecting the bottles, and stated that the machinery was so constructed and enclosed that "nothing could get in there" from the time the bottles started through the cleansing process until they emerged, filled and capped. It was because of this evidence offered by defendant that the trial court overruled defendant's objection to the testimony of Benson. Since it had been shown by the testimony of defense witnesses that the condition of defendant's plant, as to machinery and method of operation, was the same during the summer of 1938, as well as prior thereto, as it was at the time the plaintiff found the mouse, we think the Benson testimony was competent. Defendant had theretofore made it competent. Our ruling in this respect is supported by the rule prevailing in this State relative to the admissibility of proof of fires, other than the one then the subject of inquiry, caused by other engines, equipped as was the one alleged to have caused the fire. [Campbell v. The Missouri Pacific Railway Co., 121 Mo. 340, l. c. 349; Charlton v. St. Louis & S. F. Ry. Co., 200 Mo. 413, l. c. 442. See, also, Herman v. American Car & Foundry Co., 245 S. W. 387, l. c. 390-391.] The Federal Court, in a North Carolina case, Coca-Cola Bottling Co., of Henderson v. Munn, 99 Fed. 190, l. c. 193, approved the rule permitting introduction of evidence of the finding of foreign or other deleterious substances in bottles of beverages sold by defendants, at about the time, or near the time, under inquiry, where it was shown that said other bottles were filled under substantially the same conditions that prevailed at the time under inquiry.

Furthermore, as previously stated, the evidence complained of was offered and admitted only after counsel for defendant had declared

in his opening statement that defendant would prove that it would have been impossible for a mouse to have gotten into a bottle of Coca Cola in its plant. .Pursuant to this statement and in an effort to prove it, defendant offered blue prints of its machinery, and testimony in connection therewith, tending to prove that no foreign object could have gotten into a bottle in its plant. Defendant's manager, during the course of his testimony, declared such a thing to be impossible. The point is ruled against defendant.

Defendant also complains of the cross-examination by plaintiff of witness Hartman concerning his knowledge of the finding of the mouse mentioned by Benson. The court sustained objections to the cross-examination excepting as to the finding of a mouse, and, when Hartman denied knowledge of the fact sought to be established, the court sustained objections to further cross-examination along that line. The court committed no error in this regard.

Defendant also complains that counsel for plaintiff was permitted, over its objection, to cross-examine witness Hartman regarding a written report of an official of the Department of Health when said report was not in evidence. The instrument was not in evidence and the court admonished counsel not to read it in conducting the cross-examination. The record does not show that the court's ruling in this regard was violated. The record, therefore, fails to bear out defendant's contention on this point.

The general subject of complaints that may have previously been made to defendant, about which the witness Hartman was being examined, was a proper field for cross-examination in view of defendant's chief defense, which was that its plant was strictly modern, scientifically constructed and operated, that a mouse could not get into a bottle of Coca Cola bottled in the plant, *and that no complaint had ever been registered by the State Food and Beverage Department* or by the Coca Cola Company. This witness had so testified. We think plaintiff was thereby entitled to inquire of the witness, on cross-examination, regarding the extent of his knowledge of complaints concerning the character and contents of bottled Coca Cola produced at the plant, and for the purpose of testing the truth of his testimony in that regard. [Massman v. Muehlebach, 95 S. W. (2d) 808, l. c. 813.]

It is contended that the court erred in giving Instruction B. The first criticism offered to said instruction is that it permits recovery for loss of time when there was no evidence as to the value of the time lost. No question is raised as to the right of a married woman to recover for loss of time. There was ample evidence tending to prove that plaintiff at least lost some time as a result of illness caused by drinking the contaminated Coca Cola. This was sufficient to authorize a nominal recovery for loss of time, and if defendant desired the recovery of loss of time limited to nominal damages it should have

requested such a limiting instruction. [State ex rel. United Rys. Co. v. Reynolds, 257 Mo. 19, l. c. 38-39; Mabrey v. Gravel Road Co., 92 Mo. App. 596, l. c. 610.] The case of Slaughter v. The Metropolitan Street Railway Co., 116 Mo. 269, l. c. 274, 275, 276, relied on by defendant, is distinguished by the Supreme Court in State ex rel. United Rys. Co. v. Reynolds, *supra*. The verdict was for $500, and, under the record before us, we are not called upon to decide whether or not it is excessive.

It is also urged that said instruction is erroneous for the alleged reason that it permits the jury to award damages "for future suffering when there was no evidence that respondent would with reasonable certainty suffer in the future." Defendant cites no authority in support of its contention on this point. The St. Louis Court of Appeals had occasion to consider a question closely akin to this in Sneed v. St. Louis Public Service Company, 53 S. W. (2d) 1062, l. c. 1065, where the instruction under discussion permitted the jury to consider "any bodily pain or mental anguish which you find and believe from the evidence plaintiff will with reasonable certainty hereafter suffer as a direct result of said injuries, if any." It was claimed by defendant in that case that the *petition* did not count on future pain and suffering as an element of damage. The court held that, after alleging the nature of her injuries, pain and suffering, the further allegation to the effect that plaintiff "still remains in said condition," was sufficient to justify the giving of the instruction. However, in that case, there was evidence, offered at the trial, to the effect that plaintiff *would continue to suffer in the future*, whereas, in the instant case, the evidence tends to prove that plaintiff *had suffered continuously, and then suffered*, from the injuries. Plaintiff contends that evidence to this effect is sufficient to support a judgment for future suffering. The St. Louis Court of Appeals held, in Burns v. Polar Wave Ice & Fuel Co., 187 S. W. 145, l. c. 148, that proof of suffering at the time of trial, independent of and in conflict with medical evidence on the question of its permanency, made a situation where it was for the jury "to determine the probable duration of the injury." [See, also, Gillis v. Singer, 86 S. W. (2d) 352, l. c. 358, 359, to the same effect.] The instruction here considered does not authorize recovery for "permanent injuries." The Supreme Court has pointed out the distinction between "permanent injuries" and "future pain and suffering" in Derschow v. St. Louis Public Service Co., 95 S. W. (2d) 1173. We are inclined to follow the rule declared by the St. Louis Court of Appeals, in the above cited cases, relative to the sufficiency of the evidence to justify recovery for "future pain and suffering." Measured by that rule we think the instruction is not erroneous as charged.

Finally, it is urged that the court erred in permitting the introduction in evidence of two photographs purporting to be photographs

of the bottle containing the mouse. The bottle itself was introduced in evidence and plaintiff identified it. She also testified that she was present when the pictures in question were taken, and that they were pictures of the bottle containing the mouse from which she drank. The only objection to the admissibility of said pictures, that is urged here, is that they were not sufficiently identified. Plaintiff's testimony was sufficient to justify the admission of the pictures on this point, and, in view of the fact that the bottle itself was in evidence, the pictures could not have been prejudicial. [Lackey v. Missouri & K. I. Ry. Co. (Mo.), 264 S. W. 807, l. c. 809.] The admissibility of photographs as evidence is largely within the discretion of the trial court and his ruling in that regard will not be held error on appeal unless such discretion has been abused. [Home Ins. Co. of New York v. Savage et al., 103 S. W. (2d) 900, l. c. 901.]

Finding no error the judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.