Doris BERTRAM, Plaintiff-Respondent,

v.

Clifton WUNNING, Defendant-Appellant.

No. 31907.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1965.

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendant-appellant.

Librach, Heller & Byrne, William P. Byrne, St. Louis, E. L. McClintock, Jr., Flat River, for plaintiff-respondent.

DOERNER, Commissioner.

Defendant having admitted his liability for the accident which gave rise to this action, the sole issue submitted to the jury was the nature and extent, if any, of plaintiff's resulting injuries. The jury returned a verdict in favor of plaintiff for $5,000, on which judgment was entered, and after an unavailing motion for a new trial defendant appealed.

The principal points raised by defendant concern the admissibility of the testimony of plaintiff's attending physician regarding a hernia which developed subsequent to the accident, and the sufficiency of such testimony to establish a causal connection between the accident and the hernia. Dr. Frank Niesen, a surgeon, testified on behalf of plaintiff that he had examined her at the Incarnate Word Hospital in St. Louis on April 23, 1960, the day of the accident. He found that plaintiff had a large swelling on her head, difficulty in moving her neck in all directions, tenderness along her spine up in the cervical area, a large bruise on her chest, another on the abdominal wall, a swelling in the upper gastric area, and black and blue marks on her left arm and forearm. His diagnosis was that plaintiff was suffering from a concussion of the brain, a swelling of the scalp and arm, a possible swelling of the stomach, and a whiplash injury of the cervical spine. He stated, " * * * At that time I made a note that there was no, no hernia rupture." Plaintiff was discharged from the hospital on May 6, 1960. The doctor examined her at his office on May 13, 1960, and in his words his findings were, "Well, nothing positive as far as, that I could determine at that time. In other words everything had improved," which he then qualified by saying, "Except for one thing. I had here that the neck was difficult to turn to the right and left." On May 23, 1960, the doctor again saw plaintiff, at which time she complained of abdominal pains and was given a drug called Compazene, a mild sedative and a specific for nausea. He testified that plaintiff had suffered from nausea while in the hospital, which had caused him to have an x-ray made of plaintiff's stomach. Later the doctor said that nausea was frequently seen following a head injury.

Continuing on direct, Dr. Niesen testified that he examined plaintiff on July 19, 1960, and found a femoral hernia. He distinguished a femoral hernia from an inguinal hernia by stating that the " * * * blood vessels that go to the leg come out of the abdomen through a little opening called the Femoral Canal and there is an artery, a vein, a nerve in the little space and the hernia was in that area. * * *" After establishing by the doctor's testimony the causal connection between the accident and the conditions and injuries which the doctor had found present on his initial examination of plaintiff in the hospital, Mr. Byrne, counsel for plaintiff, then inquired:

"Q. Now, Doctor, assume, if you will further, that Mrs. Bertram, as I have already asked you, had a blow to her stomach; assume, if you will, Doctor, that in her hospital course (sic) she experienced pain and distension of her stomach; and assume further, if you will, that from the time that she was discharged from the hospital until, was it August you found the hernia, July 19th?

"A. 19th of July, 1960.

"Q. July 19th, 1960, at which time you found a hernia; I will ask you to state, Doctor, if you have an opinion based upon reasonable medical certainty as to whether or not the accident I have described in my previous question, is the competent producing cause of this hernia which you found present in Mrs. Bertram on July the 19th, 1960?

"A. It could be. I couldn't say.

"Q. All right. Thank you, Doctor.

"BY MR. ROBERTS: Now, if the Court please, at this time I move that all testimony relative to the hernia be stricken for the reason that he says it could be and does not testify to it as a medical certainty and that was the question that was asked him and I move that all the testimony be stricken.

"BY MR. BYRNE:    Q. May I ask you, Doctor, was that your opinion when you diagnosed the condition, was that your opinion based upon reasonable medical certainty that the accident caused this hernia?

"A.  The only way I can answer that is, would be, I don't know if it's acceptable.   It would be a percentage.

"BY MR. ROBERTS:    Well, now, if the Court please,—

"A.  I would say it would be about a 90 per cent chance that it was caused by that and 10 per cent it wasn't.

"BY    MR.    BYRNE:    Q. That's your best opinion based upon reasonable medical certainty, Doctor?

"A.  That's the only way I could answer such a question.   I don't know if that's acceptable.

"BY MR. ROBERTS: Now, if the Court please, again we move, based upon that testimony, that the entire testimony as to any hernia be stricken from the record and the jury instructed to disregard it.

"BY   MR.   BYRNE:  May I go—

"BY   THE   COURT:  No, overruled at this time."

Thereafter, over the continued objection of defendant, the doctor described the hernia, the attending pain, and the operative repair, and expressed the opinion that the small nerves which are necessarily cut during the course of the operation " * * * probably won't regenerate."

On cross-examination the doctor testified that the abdominal swelling which he found on the first examination in the hospital was at and above the belt line.   He stated that the plaintiff had not then complained of any pain in her groin, and that he had not found any bruises in the area where the hernia later developed.   He was asked, "Q.  Doctor, many things can cause hernias, isn't that true?" and answered, "Yes, sir."   Inquiry was then made, "Q. Can you state, Doctor, and tell this jury as a medical certainty that this hernia was caused by the accident that Mrs. Bertram had?" to which he answered, "No, sir." Counsel for defendant then started to renew his motion to strike, whereupon the court interposed with the statement that the record might show the reinstatement and overruling of the motion.   On further cross-examination the doctor testified that a hernia caused by a blow does not always or necessarily appear immediately; that it doesn't necessarily have to appear where the blow was received; and that a blow on or above the belt line can cause a hernia in the groin, including one which may gradually develop and appear some months later.   He also stated that when he saw the plaintiff in his office on May 13, 1960 she felt much better in the abdomen, and that he found nothing positive at that time except some restriction of the neck.

At the close of the case the defendant offered Instruction No. A, the effect of which was to tell the jury that in arriving at its verdict it should not take into consideration the evidence relating to the hernia.   The court refused to give the instruction, which refusal is likewise assigned as error.

■    The burden rested on plaintiff to show by substantial evidence the causal connection between the collision and the hernia, one of the alleged injuries for which recovery was sought.   Berry v. Kansas City Public Service Co., 341 Mo. 658, 108

S.W.2d 98; Skadal v. Brown, Mo., 351 S.W.2d 684. During the course of our judicial history our view as to what constitutes substantial evidence of cause and effect has undergone a radical change. Originally it was held that a doctor's opinion that the accident "might, could or would" produce a condition found on examination was sufficient; in fact, at that time a medical expert was not permitted to express an opinion that the trauma "did" cause the injury because, it was said, such an opinion would invade the province of the jury, whose duty it was to determine that ultimate fact. Taylor v. Grand Avenue Ry. Co., 185 Mo. 239, 84 S.W. 873; Glasgow v. Metropolitan Street Ry. Co., 191 Mo. 347, 89 S.W. 915; Roscoe v. Metropolitan Street Ry. Co., 202 Mo. 576, 101 S.W. 32. But in O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, 61, the Supreme Court pointed out that all that such an expert opinion amounted to was a mere possibility of cause and effect. With regard to the conflicting medical testimony present in that case the court remarked: "* * * It may be said the jury may decide which of the experts it will believe, and then find accordingly. The difficulty is that, after the jury has determined which expert it will believe and credits him, it comes to nothing, because what it has concluded to believe is merely that a certain thing 'might or could' produce a stated result or condition. * * * On this record the jury might or could solve the problem solely by guessing. * * * The rule discussed in the preceding paragraph II should no longer be followed."

Having breached the prior rule by its holding in O'Leary that the causal connection between the accident and the injury might be shown by the expert's opinion that the one "did" cause the other, the Supreme Court completed its destruction of the old rule in Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561. The critical issue in that case was whether the sarcoma or cancerous bone tumor which subsequently developed was caused by the accident. In answer to a hypothetical question plaintiff's medical experts expressed the opinion that plaintiff's fall "might, could or would" cause the condition from which plaintiff was suffering. On appeal the Supreme Court held that it was not improper to ask an expert witness if something might, could, or would produce a certain result, because "* * * An expert's view of possibility or probability is often helpful and proper," and "* * * Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts. * * *" But as to the sufficiency of such evidence the court said: "* * * Assurance of possibility is not of itself, however, sufficient to make a submissible case, upon the issue of cause and effect, for a plaintiff who has the burden of proof upon that issue. * * *" To the same effect see Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173; Franklin v. Kansas City Public Service Co., 239 Mo.App. 151, 186 S.W.2d 546; and Moore v. Glasgow, Mo. App., 366 S.W.2d 475.

■■ No doubt there are situations in which causal connection reasonably may be inferred without the opinion of a medical expert. Bell v. S. S. Kresge Co., Mo.App., 129 S.W.2d 932; Moore v. Glasgow, supra. Evidence of an obvious wound, as a cut or bruise, or an immediate bleeding, would justify an inference by a layman that the injury was caused by the accident. Derschow v. St. Louis Public Service Co., supra. But under the circumstances attending this case it is clear that whether the accident of April 23, 1960 caused or contributed to cause the hernia first discovered on July 19, 1960, particularly in view of the initial and repeated examinations which failed to disclose such a disability, posed a question "for men learned in the science of medicine. * * *" Moore v. Glasgow, supra. No layman,

could know or have any reasonable basis for an inference that plaintiff's hernia resulted from the accident. Kimmie v. Terminal R. R. Ass'n of St. Louis, supra; Derschow v. St. Louis Public Service Co., supra.

■ It will be noted that when first asked to express an opinion based upon reasonable medical certainty whether the accident was the competent producing cause of plaintiff's hernia Dr. Niesen answered, "It could be. I couldn't say." Pressed further, all he would say was that, " * * it would be about a 90 per cent chance that it was caused by (the accident) and 10 per·cent it wasn't." However favorable such odds might seem in some game of chance, a trial is not such a game, and an award of damages cannot be allowed to rest upon speculation and conjecture of that character. Were we to accept such an answer as constituting substantial evidence of a causal connection between an injury and the accident, then what of the odds of 60 to 40? Or 55 to 45? All that such an answer amounted to, at best, was what the doctor first stated, that "It could be" that the hernia resulted from the accident. But if the doctor who was an expert in the field and who had treated plaintiff would not say with reasonable medical certainty that the hernia resulted from the accident, then certainly a jury composed of laymen would not be justified in making such a finding. State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S.W. 2d 428. As was said in O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, 61: " * * * On this record the jury might or could solve the problem solely by guessing. * * *"

■ The testimony that the hernia could have resulted from the accident may have been admissible to show a scientific possibility. Kimmie v. Terminal R. R. Ass'n of St. Louis, supra. But unlike Ketcham v. Thomas, Mo., 283 S.W.2d 642, there were no other facts here present which tended to show both that the accident

caused the hernia and that negatived other possible causes. The doctor conceded, in fact, that many things could cause a hernia. And as noted, the rule is that expert testimony that a condition might or could have resulted from an accident, when standing alone and without other facts, is not substantial evidence from which a jury can find cause and effect. Kimmie v. Terminal R. R. Ass'n of St. Louis, supra; Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312; Baker v. Kansas City Terminal Ry. Co., Mo., 250 S.W.2d 999; Ketcham v. Thomas, supra. The court therefore erred in refusing to give the withdrawal instruction requested by defendant. Franklin v. Kansas City Public Service Co., 239 Mo. App. 151, 186 S.W.2d 546. It must be assumed that the jury took the testimony regarding the hernia and the permanent disability (the unregenerated nerves) into consideration in assessing damages; and since such evidence must have considerably augmented the damages allowed, there is no basis for a remittitur. Kimmie v. Terminal·R. R. Ass'n of St. Louis, supra; Franklin v. Kansas City Public Service Co., supra.

■ Defendant's final assignment is that the court erred in permitting plaintiff's counsel to argue and suggest damages and compensations for the first time in his closing argument. Of course, defendant had admitted liability, and it appears from the record that during the course of defendant's counsel's argument he conceded that plaintiff had suffered some bruises, so that for all practical purposes the only issue which remained for the jury to decide was the amount of damages to be awarded to plaintiff. The fact of the matter is that in his closing argument plaintiff's counsel never suggested any amount which the jury should return. All that he stated was that in filing a lawsuit a "price" must be named in the petition and that in the instant case a figure of $25,000 was "picked," but counsel added that the figure was only advisory, that the jury was not bound by it, that the figure to be awarded was up to

the jury, and that all that plaintiff asked was fair compensation. As stated, the jury returned a verdict for $5,000. In view of the wide discretion afforded the trial judge in ruling both the impropriety and prejudicial effect of argument of counsel, and the deference generally paid to his rulings by the appellate court, Votrain v. Illinois Terminal R. Co., Mo., 268 S.W. 2d 838, 844, we would be loath to hold that under the peculiar circumstances here present the court committed prejudicial error. By way of a caveat, however, it should be noted that in Shaw v. Terminal R. R. Ass'n of St. Louis, Mo., 344 S.W.2d 32, 36, 93 A. L.R.2d 265, the Supreme Court warned, "* * * we consider it unfair and improper to permit plaintiff's counsel to do this for the first time in his closing argument, when defendant's counsel has made no argument as to amount. * * *"

Plaintiff has filed a motion to dismiss the defendant's appeal for failure to comply with Civil Rule 83.05(c), V.A.M.R. We find no such violation of the Rule as would justify dismissal.

For the reasons stated the plaintiff's motion to dismiss defendant's appeal should be overruled, the judgment should be reversed, and the cause should be remanded for a new trial on the issue of damages only. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, plaintiff's motion to dismiss defendant's appeal is overruled, the judgment is reversed and the cause remanded for a new trial on the issue of damages only.

RUDDY, P. J., ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.