Roy Burton **YATES, Plaintiff-Respondent,**

v.

Leslie Earl **BRADLEY, Defendant-Appellant.**

No. 32031.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Dearing, Richeson, Weier & Roberts, Hillsboro, for defendant-appellant.

Smith & Colson, Farmington, Roy W. McGhee, Jr., Piedmont, for plaintiff-respondent.

BRADY, Commissioner.

Trial of this action for personal injuries arising out of an automobile collision resulted in a judgment in favor of the plaintiff and against the defendant in the amount of $4,600.00. Following the overruling of his timely after-trial motions, the defendant perfected his appeal to this court alleging prejudicial error in the giving of plaintiff's verdict-directing and measure of damage instructions. There is no contention the plaintiff failed to make a submissible case nor that the evidence does not support the giving of the verdict-directing instruction. That instruction is attacked purely on the ground the language used constitutes an assumption of the controverted issues in the case. Accordingly, the facts need be only briefly stated.

The collision occurred at approximately 6:30 p. m. on an October evening. It was "pitch dark." At the place where this collision occurred, the highway involved is a two-lane, black-topped pavement road running generally in an eastwardly and westwardly direction. A church sits on the south side of the highway and the driveway leading to it comes into the highway at the very top or crest of a hill. The resulting intersection is so placed that an automobile at the driveway cannot be seen by one approaching from the east until the latter is about 100 feet from the driveway and the same is true of an automobile approaching from the west. The defendant was heading in a westwardly direction on the highway intending to turn into the driveway. He stopped, put his left turn indicator light on and waited for two west bound cars to pass. At the point where he stopped his automobile he could not see over the hill ahead of him. Taken in the light required of this court by the jury's verdict, the evidence was that when the defendant started to make his turn, the plaintiff was in his line of sight had he looked ahead of him as plaintiff's automobile was then seen by a passenger in a car stopped behind the defendant. The defendant made the first part of his turn while looking in the rear view mirror. The plaintiff's automobile was approaching at a speed of forty-five miles per hour and was about three-car lengths from the defendant when the latter began his "slow turn" to the left. The defendant's automobile extended approximately two and one-half feet into plaintiff's lane of traffic at the time of impact.

The plaintiff was alleged to have received a laceration on his forehead penetrating to his skull, a concussion, and strain or irritation on the muscles of his back. There was no evidence as to the permanency of the concussion. With respect to the laceration on his forehead, the only evidence given by the plaintiff was as follows: "Q Will you show this jury where your head was cut? A In the center of my forehead here, down through there. Q And how far did the cut extend? A It was three and a half inches long from my hairline down almost into the eye." He also testified as to the laceration being sutured and the removal of the stitches. Plaintiff's treating physi-

cian testified that he examined the plaintiff the week before the trial and at that time made the following findings with reference to the cut on his forehead: "A His laceration of his forehead was well-healed. * * *" Later he was asked: "Q Now, you described the scar as being 'well-healed'. What do you mean by that, Doctor? A I mean that it's healed with a minimum amount of scar tissue." The witness was then shown some photographs of the plaintiff taken about a month after the collision and gave the following testimony: "Q Now, the scar has improved since that time, hasn't it, Doctor? A Yes, it has. Q And it's much less noticeable then, of course, than at the time within a month after the accident occurred? A Yes, sir." The defendant's examining physician testified that he "* * * noted the 2½ inch vertical scar down the mid-forehead to the bridge of his nose which extended over toward the inner canthus or inner corner of his right eye. It was a fairly minimal cosmetic consequence. * * *" His examination took place some five months prior to the trial. Plaintiff's wife did not give testimony upon this issue. She made no mention of the scar at all.

Evidence that plaintiff's other injuries were permanent is totally absent from this record. The plaintiff and his wife testified that he suffered intermittent headaches and dizziness from the date of the accident up to the time of trial and that he suffered a loss of working time as a result thereof. As to his other injuries his own physician stated: "There were no positive physical findings at the time I saw him last week. He did state that he had continued to have some pain in his neck and in between his shoulders occasionally, especially if he moved suddenly or if he turned suddenly. Q Were you able to determine what causes the pain in his neck and shoulders? A I felt that from the history this is probably due to chronic strain or irritation of the muscles in his neck and back. Q In your opinion, Doc-

tor, is that normal in cases of this kind that that pain would still exist at this time, this late, long after the accident? A It may, yes. Q Are you prepared to say, Doctor, how long he might have pain in his neck and back? A No, I could not say how long he will have pain." Later this witness was asked concerning his findings at an examination shortly preceding the date of trial. The question asked and answer given were: "Q * * * Now, there wasn't anything wrong the other day that you could find from a clinical standpoint with regard to any of his neurological signs or any physical appearance of damage or injury other than this healed scar up here, isn't that correct? A That's correct. * * *"

That part of plaintiff's verdict-directing instruction pertinent to the allegation of error raised by the defendant reads as follows: "* * * and that either defendant Bradley failed to drive his automobile in a careful and prudent manner and failed to exercise the highest degree of care in that, intending to make a left turn into a private road or driveway, he failed to yield the right of way to plaintiff, Roy Burton Yates' truck approaching from the opposite direction by turning to the left into its path when the making of such left turn would create a hazard, if you so find, or that defendant Bradley failed to drive his automobile in a careful and prudent manner and failed to exercise the highest degree of care in keeping a proper lookout in the direction in which he was operating the automobile, that such failure to keep a proper lookout was negligence, and that such negligence resulted in the collision that occurred, if you so find, then your verdict should be in favor of plaintiff Yates and against defendant Bradley."

The measure of damage instruction submitted, in separate paragraphs, past pain and suffering, future pain and suffering, loss of earnings not to exceed a stated amount, and a fourth paragraph stating: "Such distinct permanent injury, if any,

as you find from the evidence that Mr. Yates has suffered as a result of the occurrence, and in this connection you may consider such impairment, if any, in plaintiff's ability to work and labor as you find from the evidence that plaintiff has suffered as a result of the collision described in the evidence."

■ The defendant contends that plaintiff's verdict-directing instruction, to quote from his brief, " * * * assumed that defendant failed to yield the right of way and keep a proper lookout and was negligent when these were controverted issues in the case." He argues, "The only thing that the jury has to find is that this defendant Bradley failed to drive his automobile in a careful and prudent manner in doing the several acts complained of." Certainly, the defendant's position is untenable as to the first part of the submission for the words "if you so find" immediately follow that portion of the instruction and could only be read as referring to that part of the submission. The jury was therefore required by the very wording of the instruction to find that Bradley did in fact fail to yield the right of way by turning into plaintiff's path when the making of such a turn created a hazard.

■ However, plaintiff did not immediately follow the submission of failure to keep a proper lookout with the words "if you so find" or some equivalent phrase. That phrase next appears following the hypothesis of causation contained in the instruction. Nevertheless, there are at least two reasons why this failure does not render this instruction vulnerable to defendant's attack. First, because the instruction opens by requiring the jury to find the hypothesized facts. Perhaps better wording would have resulted in the insertion of another "if you so find" immediately following the submission of failure to keep a proper lookout, yet "[i]t is not necessary to sprinkle an instruction with 'if you so find' in order to avoid the charge of assumption of facts (88 C.J.S. Trial § 327d, p. 857); if the instruction in its beginning, as this one does, plainly requires the jury to find the hypothesized facts from the evidence that is sufficient." Kelly v. Kansas City Public Service Co., Mo., 335 S.W.2d 159. The second reason is that such an omission could not be prejudicial in the instant case for the reason that reading the transcript in the light required of us by the jury's verdict, it is clear that this was not a disputed issue when the time came to instruct the jury. The defendant's own testimony was that he was not keeping a proper lookout when he began his turn. This allegation of prejudicial error is without merit.

■ In Heibel v. Robison, Mo.App., 316 S.W.2d 238, 1. c. 247, this court held that the plaintiff has the burden of supporting an instruction permitting an award for permanent injuries. In the case of Driver v. Anheuser, 397 S.W.2d 11, handed down concurrently with this opinion, we said: " * * * it is a cardinal rule, firmly established, that in order for plaintiff to recover damages for permanent injury, the permanency of the injury must be shown with reasonable certainty, and while absolute certainty is not required, mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor." Citing Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328; Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173. In that same opinion a permanent injury is defined as " * * * one that, according to every reasonable probability, will continue throughout the remainder of one's life; one that is reasonably certain to be followed by permanent impairment of earning capacity, or one which produces lasting irremediable pain; one where any physical function, or the usefulness of a member of the body is permanently impaired. * * *" See Vol. 43 C.J.S. Injury p. 1120. See also Vol. 32 Words and Phrases, p. 171.

The plaintiff contends that in the instant case the evidence regarding the scar on his forehead meets these requirements. We cannot agree. It is true that scars which result in permanent disfigurement constitute a permanent injury. So this court held in Van Horn v. Union Fuel & Ice Co., Mo.App., 31 S.W.2d 260, when the medical expert testified the scar would be permanent. In the instant case there is no such testimony, and we cannot assume that all scars are permanent. Neither is there any testimony which can reasonably be said to give rise to an inference of permanency. The only testimony is that the scar was still visible at the trial, although it had improved since the accident, and that, at the time defendant's medical expert examined the plaintiff, some five months prior to the trial, it constituted a "fairly minimal cosmetic consequence." This cannot be said to meet the plaintiff's burden of showing a permanent injury; i. e., " * * * one that, according to every reasonable probability, will continue throughout the remainder * * *" of plaintiff's life. Vol. 43 C.J.S. supra.

The defendant also attacks the giving of this instruction on the ground there was no evidence to justify submission of whether plaintiff's ability to work and labor had been permanently impaired. The plaintiff, no doubt realizing the transcript is silent as to any direct testimony to support the submission, urges that plaintiff's evidence of intermittent headaches and dizziness which he was still suffering at the date of trial, together with his evidence that he lost working time as a result thereof at various intervals following the accident furnishes sufficient support for the submission. Plaintiff relies on Palmer v. Lasswell, Mo.App., 267 S.W.2d 492, citing the language at l. c. 497 where the court said: " * * * and, it has been held also that proof of suffering at the time of trial, even though such proof be independent of and in conflict with medical evidence on the question of permanency (which, in the instant case, it was not), makes 'a situation where it [is] for the jury "to determine the probable duration of the injury." ' Hutchison v. Moerschel Products Co., 234 Mo.App. 518, 133 S.W.2d 701, 705–706(9), and cases there cited. * * *" However, earlier in that same paragraph the court points out the contention then before it for ruling was that there was no evidence to justify a submission authorizing recovery for future pain and suffering. That part of the opinion upon which plaintiff relies refers only to that issue. Palmer v. Lasswell, supra, has no bearing upon the issue in the instant appeal; i. e., sufficiency of the evidence to warrant submission of a permanent impairment of plaintiff's ability to work and labor. This is made abundantly clear by the citation to the Hutchison case. In Hutchison v. Moerschel Products Co., at 133 S.W.2d 701, l. c. 706, the court makes it clear it was not speaking of permanent injuries in any manner stating: " * * * The instruction here considered does not authorize recovery for 'permanent injuries.' The Supreme Court has pointed out the distinction between 'permanent injuries' and 'future pain and suffering' in Derschow v. St. Louis Public Service Company, 339 Mo. 63, 95 S.W.2d 1173. * * *"

The judgment should be reversed and the cause remanded for new trial on the issue of damages only. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded for new trial on the issue of damages only.

WOLFE, P. J., and RUDDY, J., concur.

J. MORGAN DONELSON, Special Judge, concurs in result only.