Andrew A. KRAMER and Eleanor E. Kramer, Respondents,

v.

MAY LUMBER COMPANY, a Corporation, and Hazel Withee, Appellants.

No. 24882.

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 7, 1968.

Application to Transfer Denied Nov. 12, 1968.

Donald L. Mason, Mason, Gant & Moran, Kansas City, for May Lumber Co., appellant.

William A. Rundle, Jr., Robert M. Kroenert, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for Hazel Withee, appellant.

Robert S. McKenzie, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for respondents.

MAUGHMER, Commissioner.

Plaintiffs sued for loss of services and medical expenses incurred as a result of personal injuries to their minor daughter which they alleged were caused by the negligence of the defendants. The verdict was for plaintiffs and against the defendants, May Lumber Company and Hazel Withee, in the amount of $9500. Both defendants have appealed.

In the spring of 1965, the defendant, Hazel Withee and her husband, Adelbert Withee, began construction of a residence at 11304 East 39th Street, Independence,

Missouri. The plaintiffs, Andrew Kramer and Eleanor E. Kramer, with their daughter, Kathy Ann Kramer, resided immediately to the west. On August 4, 1965, construction of the Withee residence had progressed to where it was "closed in" but not finished. Soon after 1:00 p. m. on that day, Albert White and Calvin Davis, employees of defendant, May Lumber Company, delivered 7,000 feet of dry wallboard to the Withee house. A portion of this wallboard was stored in the northeast bedroom. Albert White was not certain, but thought they "stacked" it along the north and south walls. He said they usually stacked it with the bottom end of the inner sheet out 12 or 14 inches from the wall but he could not say definitely that this one was placed that far out. His deposition had been taken and there he said the first sheet was about 6 or 8 inches from the wall. However, he also stated in the deposition that he did not know exactly how far it was from the wall, but they usually placed it about 12 inches away. At the trial Kathy Kramer testified that the wallboard was standing "almost perpendicular, just out about four inches." However, in August, 1965, she stated and also signed a written document declaring that the wallboard was out about the length of two of her feet. Kathy was 8 years old when the accident occurred on August 4, 1965.

The plaintiffs offered Robert F. Hoover, the dry wall contractor on this particular job, as an expert on "stacking" wallboard. He said it was usually placed about a foot from the wall at the bottom, although he thought "six or eight inches is safe", and even four inches would not be dangerous for men experienced in handling such material. On cross-examination he made this statement: "If it will stand when the delivery people walk away from it, it will probably stand—that's right, unless some external force moves it."

Understandably, Kathy Ann Kramer, eight years old, was, during the summer of 1965, interested in the building work going on next door. All parties agree that she was frequently on the construction site. She brought drinking water to the various workmen and she picked up sticks and boards. Kathy's mother thought she never went over there without permission from Mr. or Mrs. Withee. The Withees, however, said they never told her to come, and never even gave her permission to come.

We now come to August 4, 1965. It was a cloudy day. It looked as though it might rain. The defendant, Mrs. Withee, arrived late in the afternoon, primarily to close the windows against the threat of rain. She and Kathy were in the northeast bedroom and one or both were trying to close the windows or trying to move the wallboard when the stacked wallboard fell, pinning Kathy's left leg underneath. She sustained a fracture of the left thigh bone.

The testimony of Mrs. Withee and Kathy differs as to how Kathy came to be there and what she and Mrs. Withee were each doing at the particular time. Mrs. Withee says that Kathy came over without invitation; that she gave no instructions to her to do anything; that she did not believe either touched the wallboard, but that it just fell. Kathy said she saw Mrs. Withee arrive, went over and asked if she could help; that Mrs. Withee told her to get her broom and help sweep; that both were trying to get the windows down in the northeast bedroom but the stack of wallboard was in the way. Then Kathy said: "She asked me to help her. Then she got on the side and I got in the middle and we put it down." Kathy quoted Mrs. Withee as saying: "I'll get on the side, Kathy, and you get in the middle, then I'll raise it a little and you grab hold of it and we can put it down." These references were to the window. We now set forth Kathy's description of the occurrence. She said that Mrs. Withee attempted to move the sheetrock so they could close the window; that Mrs. Withee told her to take hold of the outside sheet to help move it; that Kathy did so, the sheet they were holding slipped and the whole stack came

down, pinning Kathy underneath. In any event, the whole stack fell and pinned Kathy or at least her left leg, underneath. Mrs. Withee partly raised the wallboard, Kathy rolled or pulled herself out from underneath, help was called and Kathy was taken to a hospital.

The Kramer family physician, Dr. Albert D. Eschelman, was first called. He is a general practitioner and immediately sent or referred the patient to Dr. McCullough, an orthopedic specialist. However, Dr. Eschelman later took x-rays and the one of February 9, 1966, shows the left leg (the one injured) to be about three-eighths of an inch longer than the other leg. He said this was not disabling. Later Dr. McCullough said that as time went on the disparity in length between the two legs would tend to equalize. He also remarked that one of his legs was one inch shorter than the other and he "just thought nothing of it."

Dr. McCullough, the orthopedic surgeon, tried first by traction to get the broken ends in position for uniting. He said one end of the broken bone was "hung up" into the muscle and it became necessary to operate and put a steel plate with eight screws into the leg. The plate and screws are still there and, according to the doctor, can probably be left there indefinitely unless it should cause pain, which he thought was unlikely. However, if it should cause pain or discomfort, then the plate and screws could be removed by surgery. The doctor would not say it was likely, in his opinion, that such a necessity would ever arise. Describing her condition at the time of the trial, which was almost two years after the occurrence, Dr. McCullough said: "She doesn't manifest any limitation of her physical activities; that is, she is able to do what she wants to do." He stated that she did not require any special attention or nursing care at the time of trial.

The total expenditures of plaintiffs for treatment of Kathy necessitated by this injury were $1396.26. This includes hospi-

talization, doctor bills, appliances, ambulance, special shoes, shoe braces and medicines. Kathy missed one semester of school. She was in the hospital for sixteen days and wore a cast until October 20, 1965. Her parents gave her nursing care —complete while the cast was on—and partial for a few months thereafter. The plaintiff, Eleanor Kramer, testified that Kathy "was pretty much on her own" after she started back to school early in 1966. She said Kathy did not require any special attention or nursing care at the time of trial (May, 1967).

The May Lumber Company, defendant-appellant, asserts that its motion for directed verdict should have been sustained because no negligence was proved against its agents and in the alternative, if there was any negligence, it was not the proximate cause of the child's injury. We agree with appellant as to each contention.

Negligence has been variously defined but it means, in this case as to this appellant, failure to use that degree of care which an ordinarily careful and prudent person would use under the same or similar circumstances. 65 C.J.S. Negligence, § 1(4), p. 442. The only negligence suggested or submitted as to this defendant herein was stacking wallboard "at a steep angle". We have read the record and find no substantial evidence that the May Company did so. Mr. Albert White's testimony was that he usually stacked it 12 inches from the wall and he thought he did so on this occasion, but could not say positively; that the distance might have been only 6 or 8 inches. Kathy Kramer said at the trial she thought the first board was only 4 inches from the wall, although she stated and signed a statement soon after the occurrence, estimating the distance at twice the length of her foot. Remember Kathy was 8 years old, was in the room (she said) trying to lower a window and admittedly guessing at the distance and not very familiar with just what distance amounts to 4 inches or 8 inches. But even if this tes-

timony be accepted as substantial evidence that the wallboard was only 4 inches from the wall, still plaintiff's expert, Mr. Hoover, wouldn't call that dangerous. He said 4 inches was not dangerous for men familiar with the material, and finally said if the delivery men could stack it and walk away, it wouldn't fall without some outside force. Under this evidence the jury was permitted to find (1) the sheetrock was stacked "at a steep angle", (2) and May Company employees were thereby negligent, and (3) such negligence caused or contributed to cause the injuries. We find no substantial evidence that the wallboard was stacked so close to the wall as to be dangerous or amount to negligence.

In addition, according to plaintiffs' testimony and theory the material did not fall until Mrs. Withee and Kathy attempted to move it. This was the proximate cause of the fall. There is no evidence, opinion or otherwise, that the distance the wallboard was from the wall, had anything to do with the fall. In Cohagan v. Laclede Steel Company et al., Mo.Sup., 317 S.W.2d 452, 457, Laclede sold the bundle of steel and wrapped it with a comparatively soft wire binder. Steel Sales Company hooked a hard metal hook onto the binder to unload. It broke and plaintiff was injured. The trial court directed a verdict for Laclede. The Supreme Court affirmed and said:

"We do not need to determine whether there was a sufficient showing of negligence in loading and transporting the bundle of steel, because we have concluded that the negligence asserted was not the direct and proximate cause of the plaintiff's injury. The efficient and producing cause of the injury was the act of the employees of Steel Sales Company placing the hard metal hook under the comparatively soft wire binder and undertaking to lift the bundle of steel by means of the crane. When this occurred, the alleged negligent acts of the defendants in loading and transporting had ceased to be active."

In our case the efficient and producing cause was the act of Mrs. Withee and Kathy in attempting to move the wallboard.

In Busch v. The Great Atlantic & Pacific Tea Company, Inc., Mo.App., 416 S.W. 2d 247, 251, the court quoted with approval as follows:

"As was stated in Clymer v. Tennison, Mo.App., 384 S.W.2d 829, 'Prior and remote cause cannot be made basis of action if remote cause did nothing more than furnish condition or give rise to occasion by which injury was made possible and there intervened between that cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, * * * .' "

We must reverse outright the judgment as to the defendant May Lumber Company.

The testimony of Kathy to the effect that the defendant, Mrs. Withee, invited her to get her broom and help sweep, and directed her to help move the wallboard establishes liability as to Mrs. Withee. In fact, it is not contended otherwise.

On appeal, Mrs. Withee says the court erred in giving Instruction No. 5, which authorized the jury to compensate plaintiffs for future loss and damages, when there is no evidence supporting such an award, either for future medical expenses or for future loss of earnings. She says, second, that the verdict of $9500 is so excessive as to show bias and prejudice.

We have before us here the claim of the minor child's parents for damages which they sustained or will in the future sustain during her minority as a result of the injury. Those damages include all medical expenses which the parents paid arising from the injury and whatever loss they may have sustained by reason of losing the services of the minor child. If the evidence shows there will be future loss of services or additional expenses these may also be recovered. This is not an action by the child to recover for her personal

pain and suffering or other individual possible damages.

■ It is basic that an instruction which invites or directs the jury to allow for any particular item (such as future loss of earnings or loss of services or future medical expense) must be supported by substantial evidence of probative force. Instruction No. 5 told the jury that if it found the issues in favor of the plaintiffs "then you must award plaintiffs such sum as you believe will fairly and justly compensate the plaintiffs for any damages you believe they sustained and *are reasonably certain to sustain in the future* as a direct result of the occurrence mentioned in the evidence." (Italics supplied). This is MAI 4.01.

In Driver v. Anheuser, Mo.App., 397 S. W.2d 11, 16, the court said:

"In resolving these opposing contentions, we point out that it is a cardinal rule, firmly established, that in order for plaintiff to recover damages for permanent injury, the permanency of the injury must be shown with reasonable certainty, and while absolute certainty is not required, mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor. Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328; Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173."

In Zoeller v. Terminal Railroad Association of St. Louis, Mo.App., 407 S.W.2d 73, 77, 78, the suit was based on injuries sustained by a railroad employee. The court instructed on future damages with the same instruction as was used in our case. We quote in part from that opinion:

"Instruction No. 4 told the jury that if it found the issues in favor of plaintiff, 'then you must award plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages

you believe he sustained and is reasonably certain to sustain in the future, as a direct result of the occasion mentioned in the evidence.' This is MAI 4.01. In the approved form, the words 'and is reasonably certain to sustain in the future' are placed in brackets with the appended footnote, 'This may be added if supported by the evidence.' Defendant charges error in the inclusion in the instruction of the element of future damages. Would the evidence herein support a conclusion that the plaintiff is reasonably certain to suffer pain and weakness in the ankle *in the future?*

\* \* \* \* \* \*

"Plaintiff's situation is characterized by extreme uncertainty as to the course of future events.

\* \* \* \* \* \*

"The requirement of reasonable certainty is not satisfied by a mere showing of likelihood. The evidence must show more than a possibility. Allen v. St. Louis & S. F. R. Co., 184 Mo.App. 492, 170 S.W. 455. And probability alone will not suffice. Schwend v. St. Louis Transit Co., 105 Mo.App. 534, 80 S.W. 40; Allen v. St. Louis & S. F. R. Co., supra. 'Consequences which are contingent, speculative, or merely possible are not to be considered. To justify a recovery for apprehended future consequences, there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury.' Clark v. Mississippi River & B. T. Ry., 324 Mo. 406, 23 S.W.2d 174, 179. We regard as sound the proposition enunciated in Lucas v. State Farm Mutual Auto Insurance Company, 17 Wis.2d 568, 117 N.W. 2d 660, cert. denied, 373 U.S. 922, 83 S.Ct. 1522, 10 L.Ed.2d 423, that before a recovery may be allowed for future pain and suffering there should be competent medical findings and the unsupported subjective statements of the injured party are not sufficient."

We have considered the evidence as to future damages. The only suggestion of future medical expense was from the possibility that it might become advisable to remove the plate and screws from Kathy's leg. As to whether or not it might become necessary to do this, Dr. Eschelman, the family physician, said he would leave the answer to Dr. McCullough, the orthopedic specialist. Dr. McCullough expressed his belief that it was unlikely that it would be necessary to remove the plate and screws. He said they should be removed only if the patient began to suffer pain. As to Kathy's condition at the time of trial, Dr. McCullough said: "She doesn't manifest any limitation of her physical activities; that is, she is able to do what she wants to do." The plaintiff, Mrs. Eleanor Kramer, testified that Kathy "was pretty much on her own" after she started back to school early in 1966. This was more than one whole year prior to the date of trial. In our opinion this evidence does not show even a probability that additional medical expenses would be incurred during Kathy's minority. There was not a word of testimony as to any services which Kathy's parents would lose in the future by reason of this occurrence. Any allowance for loss of services would therefore be speculative and would be unsupported by any substantial evidence.

In our opinion it was error to give that portion of Instruction No. 5 relating to future damages.

If appellant's assignment urging excessiveness in the amount of the verdict were to be determinative of this appeal, it would require serious consideration. But if, on a retrial, an allowance for future damages is not submitted, it is possible that a second verdict will not present this problem—surely not in exactly the same form. Since there must be a retrial because of error in Instruction No. 5, we believe it unnecessary to consider this final assignment.

The judgment as to the defendant May Lumber Company is reversed and as to the defendant Hazel Withee is reversed and remanded for a new trial.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.